## Gasparini Excavating Company, Appellant, *v.* Pennsylvania Turnpike Commission.

Argued May 23, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Joseph E. Gallagher,* with him *James J. Ligi, Carlon M. O'Malley, Sr.,* and *O'Malley, Morgan, Bour and Gallagher,* for appellant.

*John J. Schatt,* for Pennsylvania Turnpike Commission, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 8, 1963:

Gasparini Excavating Company, Inc., appealed from the judgment of the Court of Common Pleas of Dauphin County which overruled and dismissed appellant's motion to modify and correct an award of arbitrators or to resubmit the matter to the arbitrators.

Appellee, Pennsylvania Turnpike Commission, on or about April 26, 1955, advertised for bids for the construction of a portion of the Northeastern Extension of the Pennsylvania Turnpike. The bids were opened on May 18, 1955 and appellant was the successful bidder. On May 31, 1955 Gasparini and the Commission signed a written contract whereby Gasparini was to construct, in Luzerne County, the part of the Turnpike known as Section 37-I. Appellant was to commence work when ordered to do so by the appellee and was to have the work completed on or before September 1, 1956.

The Commission advertised for bids for slushing mine areas under Section 37-I, which work was awarded to Sullivan Trail Coal Company. The drilling and casing of the holes through which the material would be slushed was to be done by Manu-Mine Research and Development Company under a negotiated contract with the Commission.

Section 37-I comprised a distance of 15,176 lineal feet and included an interchange known as DuPont or Wyoming Valley. The right of way width was 200 feet, in addition to easements for slopes in cuts and fills.

Appellant, in order to establish the grade of the roadway required by the contract, had to excavate, using material from the cuts to fill the embankment areas. This movement of earth was rather extensive in some parts of the section, and it was necessary to have sufficient equipment of the proper kind deployed on the right of way. The direction of the flow of material excavated to make the fills or embankments was determined by balance areas where the excavating was being done. The movement of the earth from the place of excavation, either north or south, required the availability of an area of fill or embankment to receive it. The terrain on which the work was being done and the quantity and distances the earth could be moved most efficiently regulated the establishment of balance areas.

This section, as other parts of the Northeast Extension, crossed anthracite coal deposits and mined veins of coal where voids existed. For the purpose of stabilizing the surface, the Sullivan Trail Coal Co. slushed material into holes, drilled and cased by Manu-Mine Research and Development Co. The drilling and slushing work was to be done before any embankment or fill was placed and where cuts were to be made the excavating was to be done before the drilling and slushing was performed.

The contract contemplated the situation where other contractors would be working and obviously coordination and co-operation would be necessary to insure completion of the work in the allotted time.[1]

---

[1] "Special Conditions, 13. Cooperation With Others. To insure completion of the entire Turnpike within the allotted time, as required by a predetermined program of the Commission, contracts

In the Gasparini contract with the Commission is the following provision: "20. Cooperation With Slushing Contract. During the time that the Contractor is carrying on his operations under this contract, other contractors will be engaged in slushing operations on the site.

"The Contractor shall, therefore, plan and conduct his operations in such a manner as to cause a minimum of interference with the slushing operation. In order that the slushing may be completed in the least time, the Contractor will be required to schedule excavation in the slushing areas first. No *embankment* will be placed in areas that are to be slushed until slushing is completed. No claims for damages or extra costs due to delay to the Contractor's work caused by the work of slushing contracts will be allowed and it is hereby agreed that the contract prices are submitted on this basis."

On June 6, 1955, the Commission gave Gasparini official notice to proceed actively on the project and arrange to complete fully all work thereunder on or before September 1, 1956. The contractor mobilized the necessary equipment and brought it to the site of operations.

---

for other work in connection with the Turnpike will be in progress concurrently with this contract. The Contractor's attention is directed to the requirements of Part GC 4-F, 'Separate Contracts' and Part GC 4-G, 'Rights of Various Interests' in this respect.

"GC 4-F. Separate Contracts. The Commission reserves the right to award other contracts in connection with this work. The Contractor shall afford other contractors reasonable opportunity for the introduction and storage of their materials and the execution of their work and shall properly coordinate his work and theirs.

"GC 4-G. Rights of Various Interests. Whenever work being done by other contractors or forces is contiguous to work covered by the Contract, the respective rights of the various interests involved shall be established by the Engineer, to secure the completion of the various portions of the work in general harmony."

At about the same time, the slushing operation was going on in the area to receive the fill or embankment and the appellant was not able to proceed with a large cut or excavation to move the earth as there was no place to receive it. Although the contractor was able to do some work on other parts of the section the slushing work as it proceeded along the right of way prevented appellant from going on with its work, except in a limited way, until November, 1955.

The work was completed by appellant in July, 1957 instead of September 1, 1956. Gasparini filed several items of claim with the Commission but of concern here are claims of (1) Gasparini for additional costs due in delays in its work, (2) for additional costs incurred by B. G. Coon Construction Company, the paving subcontractor, and (3) for additional costs incurred by G. H. Litts, the concrete structures subcontractor.

The Commission rejected the claims and the matter went to arbitration under a provision in the contract between the parties and the majority of the arbitrators denied the claims. The decision and award of the board of arbitrators ruled that the claims arising out of delays caused by the drilling and slushing operation were denied for the reason that paragraph 20, supra, of the contract contained a specific no damage clause applicable to the delays involved in these particular claims.

Gasparini, pursuant to provisions of the Act of 1927, P. L. 381, §11(d), 5 P.S. §171(d)[2] presented a

---

[2] Section 11 provides: "In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration: . . . (d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.

"The court may modify and correct the award or resubmit the matter to the arbitrators."

petition in the Court of Common Pleas of Dauphin County, to modify and correct the award of arbitrators and to resubmit the matter to arbitration. The court, in its opinion and order, overruled and dismissed the motion and rule, and entered judgment in favor of the Pennsylvania Turnpike Commission and against Gasparini Excavating Company, Inc. This appeal followed.

The Act of April 25, 1927, P. L. 381, 5 P.S. §161 et seq., "places an award on the same footing as the verdict of a jury; mistakes of law may be rectified on appeal; [citing cases] and on a motion to vacate the award of the arbitrators, every inference of fact must be drawn in favor of the party having the award". *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 359, 39 A. 2d 139 (1944), *McDevitt v. McDevitt,* 365 Pa. 18, 73 A. 2d 394 (1950).

The court below in its opinion denying appellant's claim said: *"The crux of Gasparini's complaint* with respect to these disputed claims is that the Turnpike Commission actively and directly interfered with the Contractor's work when it notified Gasparini to proceed with the work, knowing that the Contractor would mobilize its equipment and personnel and then be unable to do the job because Manu-Mine Research and Development Co. and Sullivan Trail Co. were already occupying the work-site for their drilling and slushing operations respectively. Gasparini avers that the 'No Damages' clause in Paragraph 20 of the Special Conditions of the contract does not preclude it from recovery on its Claims Nos. 1, 4 and 5 and that accordingly the matter should be re-submitted to the Arbitrators for further proceedings. On the other hand, the Turnpike Commission contends that these claims should be denied because Paragraph 20 contains a specific 'No Damages' clause applicable to the delays involved in these claims and that Gasparini was put on

notice by the provisions of the contract that other contractors would be working in the same area."

The arbitrators made no findings of fact, not being required to do so, and rendered their award on the legal effect of the provision in the contract providing for no damages for delay. The part of the decision and award relevant in this appeal is as follows: "A majority of the arbitrators find that Claims Nos. 1, 4 and 5, arising out of delay occasioned by the slushing and drilling contractor, should be denied for the reason that paragraph 20 of the Special Conditions, at page 9 thereof, contains a specific no damage clause applicable to the delays involved in these particular claims. This paragraph contemplates the very delays complained of and provides that 'No claims for damages or extra costs due to delay to the Contractor's work caused by the work of slushing contracts will be allowed and it is hereby agreed that the contract prices are submitted on this basis.' "

Where parties to a contract provide for arbitration, disputes involving questions of law as well as facts must be submitted to the arbitrators: *Shannon v. Pennsylvania Electric Company*, 364 Pa. 379, 72 A. 2d 564 (1950).

In its opinion, the court further said: "We believe the question on which this case turns is whether the Turnpike Commission obligated itself to pay 'Extra Costs' to Gasparini solely because of delay in making the work site available to the Contractor. Could the delays experienced by the Contractor have been reasonably contemplated under the contract or were those delays unreasonably and abnormally increased by the Owner-Turnpike Commission? What was the real situation when Gasparini submitted its bid in May 1955 and when it received the Commission's Notice to Proceed on June 6, 1955. The contract provided that it should be completed on or before September 1, 1956.

The work was begun on June 13, 1955. The period of the alleged delay complained of was from June 30 to November 30, 1955. During this period, however, the Gasparini Company, nevertheless, was able to excavate approximately 50,000 cubic yards of earth, to do clearing and grubbing and also some drainage work. At the same time the company had other jobs under contract. The work in the instant case, including some additional work not originally contemplated by the parties, was completed on July 12, 1957.

"There is testimony that Manu-Mine began its drilling operations in the area in question (Section 37-I), and immediately adjacent thereto, between February 28 and May 3, 1955; that the pattern of holes Manu-Mine was drilling in Sections 37-H & J was about the same as in Section 37-I and that this area could have been examined by Gasparini's representatives prior to the submission of its bid for the reason that the area was available for inspection. Moreover, the Special Notice in the Turnpike Commission's 'Instructions to Bidders', at page 5, provided: 'Bidders are required to *inform themselves fully* of the conditions relating to construction and labor under which the work *will be or is now* being performed and each successful bidder must employ, so far as possible, such methods and means in the carrying out of his work as will *not cause any interruption or interference* with any other Contractor. . . .' "

The court after considering the testimony before the arbitrators came to the following conclusion: "Upon full consideration of the testimony given before the Arbitrators, we are of the opinion that the Gasparini Company, whose principal office at Peckville in the adjoining County of Lackawanna is in close proximity to the work-site, foresaw or reasonably should have foreseen at the time it submitted its bid and executed the contract with the Turnpike Commission that there

would be delays due to the operation of the Manu-Mine and Sullivan Trail Co. drilling and slushing operations on the work-site and that it was the intention of Gasparini and the Commission that the remedy of Gasparini for any delay should be limited to obtaining an extension of time to complete its work and not to subject the Commission to a claim for 'Extra Costs Due to Delays'."

We believe the foregoing conclusion of the court and the arbitrators is an erroneous conclusion of law. The appellant was given formal notice to begin work on *June 6, 1955,* and to finish the project in compliance with the contract by September 1, 1956. Gasparini was required to have on the job a minimum amount of equipment to do the work adequately and to meet the completion date. The work site was not available to Gasparini, after having been ordered to start work, until *November 30, 1955.* The appellee was aware of the engineering procedures required to bring the right of way to proper grade and the magnitude of the cuts and fills to be made. It also knew Manu-Mine would be occupying the area to the exclusion of Gasparini and in face of this knowledge ordered Gasparini to start operations when the work site was denied. It cannot rely on the provision (Para. 20) providing for no damages for delay caused by the slushing contractor when appellee ordered appellant to proceed under the contract. The appellant was justified in believing, when ordered to begin work, it could go ahead with its work in cooperation with other contractors "as required by a predetermined program of the Commission, [as] contracts for other work in connection with the Turnpike will be in progress concurrently with this contract" (Special Conditions) and "[t]he Contractor shall, therefore, plan and conduct his operations in such a manner as to cause a minimum of interference with the slushing operation." (Para. 20). The court

below relied heavily on *Henry Shenk Company v. Erie County,* 319 Pa. 100, 178 A. 662 (1935), wherein our Court said, pp. 104-105: ". . . Where contracts contain a provision against delay of other contractors or other incidents of the work, which provide in substance as this one does for no liability on the part of the owner for delays of contractors or changes in the work, such provision includes delays of other contractors in connection with the work, or delays which are covered by the contract or reasonably anticipated from the circumstances attending the project: Restatement of Contracts, Section 315 (1) (b) ; see Goss v. Northern Pac. Hosp. Assn., 50 Wash. 236; Thompson v. St. Charles Co., 227 Mo. 220. But such provisions have no reference to an affirmative or positive interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work unless delay in performance is contemplated by the contract; . . . Where a party under a delay and time extension provision on entering a contract *foresees or should foresee* that the work might be delayed by the failure of the owner or another contractor to perform, *'the remedy therefor . . . [is an] extension of time on the part of those who perform the work,* and the presumption arises *that this was intended to measure the rights of the contractor thereunder'*: Goss v. Northern Pac. Hosp. Assn., supra; Cornell Co. v. Schuylkill Co., supra; see Richard v. Clark, 88 N.Y.S. 242; Haydnville M. & M. Co. v. Art Institute, 39 Fed. 484'." and at pages 109-110: "The rule that a party cannot recover damages from a defaulting defendant which could have been avoided by the exercise of reasonable care and effort is applicable to all types of contracts. As stated in Sedgwick on Damages, (9th Ed.), section 205: 'The rule [avoidable consequences not recoverable] may be applicable in any case of breach of

contract. Where damages are claimed, not for the direct injury, that is, the loss of the value of the contract itself, but for a consequential loss, the plaintiff cannot recover for such loss if he might reasonably have avoided it.' Since the early New York case of Clark v. Marsiglia, 1 Denio 317, practically all American jurisdictions recognize and adopt this rule: Chamberlin v. Morgan, 68 Pa. 168; Hoffman v. Delaware, etc., R.R. Co., 39 Pa. Superior Ct. 47.

"Avoidance of the consequences of the county's delay in the instant case would not have necessitated affirmative efforts on the part of appellee and consequently the duty to discharge a useless working force or utilize it otherwise is stronger than in a case where a contractor would have had affirmatively to take steps to avoid the consequences of the delay. In other words, plaintiff admitted that he could have put his men at work some place else or have procured others and he should have done one or the other and not load a bill of $18,000 on the county for wages, etc."

In the instant case there was interference by the appellee after ordering appellant to begin performance of work and then denying access to the work area occupied by another contractor, Manu-Mine. In the words of Justice KEPHART in Henry Shenk Co., supra, 319 Pa. at p. 104, "But such provisions have no reference to an affirmative or positive interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work unless delay in performance is contemplated by the contract; . . .".

Here there was failure in the essential matter of the Commission not having a predetermined program and interference with appellant's performance by its exclusion from the work site from June 30, 1955 until No-

vember 30, 1955, after Gasparini received its notice of June 6 to start its operation.

As far back as 1905 this Court in *Sheehan v. Pittsburg*, 213 Pa. 133, said: "Notwithstanding the breadth of the language of the agreement that all loss or damages from unforeseen obstructions and difficulties and from delay, were to be borne by the contractors, it is clear that the delay from the city's failure to obtain complete right of way was not in the class of difficulties and delays which were in the minds of the parties, for the agreement itself was based on the assumption by both parties that the complete right of way had been secured so that the work could be begun at any point and proceed without interruption.

"For the same reason the provision for extension of time only on written assent by the director of public works is not applicable.

"There was therefore no breach of the agreement by the plaintiffs which prevented them from recovering, and the authorities are clear that they were not bound to abandon the work or to be taken as having waived the delay caused by the city. While they might have abandoned it they had the option to continue and claim the damages caused by the city's fault."

The question now before us was decided in *American Bridge Co., Inc. v. State*, 245 App. Div. 535, 283 N.Y.S. 577 (1935).

The American Bridge Co. had the contract for the erection of the superstructure of a bridge. There was a delay due to difficulty with construction of a pier by the foundation contractor and this caused delay in erecting the foundation of the bridge. This delay was apparent, however, the State ordered American Bridge Co. to proceed with the fabrication of the steel for the superstructure. The steel had to be stored outdoors awaiting erection and required repainting at an additional expense. There was a provision in the contract

for an extension of time to be given the contractor if the piers were not constructed on time and a further provision which stated it was " 'expressly understood and agreed that no claim shall be made against the State for any damages due to delays in the completion of the Main Piers which are constructed under another contract' ". The claim was allowed, as the State in ordering fabrication of the steel when delay was apparent was actively and unnecessarily interfering with the American Bridge Co. work. For other cases involving "no damages for delays" clause, where damages were allowed see: *W. L. Waples Co. v. State,* 178 App. Div. 357, 164 N.Y.S. 797 (1917); *Wright & Kremers, Inc. v. State,* 263 N.Y. 615, 189 N.E. 724 (1934); *Garofano Construction Co., Inc. v. State,* 183 Misc. 1080, 52 N.Y.S. 2d 186 (1944); *De Riso Bros. v. State,* 161 Misc. 934, 293 N.Y.S. 436 (1937).

The appellant raises another question in this appeal. Gasparini, at the hearing before the board of arbitrators, offered the testimony of a number of witnesses from the case of *Commonwealth v. Evans,* in the Court of Quarter Sessions of Dauphin County, 190 Pa. Superior Ct. 179, 154 A. 2d 57 (1959), and 399 Pa. 387, 160 A. 2d 407 (1960), to prove (1) the delay, which caused the contractor's loss, was predicated on a fraud perpetrated by certain Manu-Mine officials and certain members of the Commission, (2) the drilling and slushing contracts were wholly unnecessary and were the result of a criminal conspiracy between the aforesaid officials and members of the Commission, (3) the delays sustained by the contractor were not within the contemplation of the parties, that is the contractor could not have reasonably anticipated it would be subjected to delays occasioned by the bad faith and fraudulent conspiracy of the aforesaid officials and Commission members.

The offer was objected to by counsel for the Commission and sustained by the arbitrators. The court affirmed the action.

We find it unnecessary to consider this matter since we are rectifying the mistake of law of the board of arbitrators and the court below and remanding the record to the court below for referral to the board of arbitrators to make an award in favor of Gasparini Excavating Company, Inc., and against the Pennsylvania Turnpike Commission in the proper amount found to be due on its claims (1) for additional costs due Gasparini, (2) for additional costs incurred by B. G. Coon Construction Company and (3) for additional costs incurred by G. H. Litts.

Judgment vacated and record remanded for further proceedings in conformity with the foregoing opinion.

Mr. Justice COHEN dissents.