443 P.2d 1005

GRANT CONSTRUCTION CO., a Utah corporation, and Grant Company a co-partnership consisting of Joseph W. Grant, Willard J. Grant, Darwin L. Grant, Melvin A. Johnson and James I. Green, Plaintiffs-Respondents,

v.

Wallace C. BURNS, Ernest F. Gaffney and R. Doyle Symms, Acting as the Idaho Board of Highway Directors, Defendants-Appellants.

No. 10147.

Supreme Court of Idaho.

July 25, 1968.

Faber F. Tway, Chief Legal Counsel, Dept. of Highways and Jack C. Riddle-moser and F. Robert Studdert, Counsel, Dept. of Highways, Boise, for appellants.

Hawley, Troxell, Ennis & Hawley, Boise, for respondents.

SMITH, Chief Justice.

Respondents (plaintiffs) Grant Construction Company, a Utah corporation authorized to do business in Idaho, and Grant Company, a co-partnership, both engaging in highway construction work, seek by this action to recover damages for an alleged breach by appellants (defendants) Idaho Board of Highway Directors, of a highway construction contract. The contract involves a construction project on a portion of a highway in Bonner County, Idaho.

May 9, 1961, respondents submitted a bid for constructing a roadbed, drainage structures, and plantmix bituminous surface on 1.727 miles of Highway No. 2 between Priest River and Thama, known as Idaho Federal Aid Project No. F–5121(5) in Bonner County. Respondents having submitted the low bid on May 16, 1961, respondents and appellants Idaho Board of Highway Directors entered into a contract for construction of the work. The contract consists of the bid, bond, plans, specifications, and Standard Specifications for Highway Construction in the State of Idaho, 1957 edition.

May 24, 1961, respondents were advised by appellants to commence construction of the project on or before June 1, 1961. The contract specified that the entire project, with certain exceptions not germane to this action, should be completed on or before November 1, 1961, and that liquidated damages for failure to complete the work by that date would be $300.00 per day thereafter. The Standard Specifications for Highway Construction, 1957 edition, published by the State of Idaho Department of Highways and incorporated into the contract at bar, states in pertinent part:

"105.07. Utility Facilities. Unless otherwise provided by the special provisions or plans, utility facilities, both above ground and below ground, that are required to be removed, altered or relocated as a part of the highway improvement will be removed, altered or relocated in advance of construction operations at no cost to the Contractor. The owners will be notified by the Engineer to remove, alter or relocate their properties within a specified time or times and the Contractor shall not interfere with said property before the expiration of the specified time or times.

"If, as a result of utility facilities not being removed or relocated as above provided, the Contractor sustains loss which could not have been avoided by the judicious handling of forces, equipment and plant, there shall be paid to the Contractor such amount as the Engineer may find to be a fair and reasonable compensation for such part of the Contractor's actual loss as, in the opinion of the Engineer, was unavoidable, except as otherwise provided in this subsection.

\*　　\*　　\*　　\*　　\*　　\*

"Compensation for idle time of equipment shall be determined in accordance with the rates set forth in the special provisions or as agreed upon in writing. The daily rate shall be 50% of the hourly rate multiplied by 8 and compensation will be made for each calendar day upon which the equipment is idle.

"Actual loss shall be understood to include no items other than necessary payments for idle time of men, idle time of equipment, cost of extra moving of equipment, and cost of longer hauls, with no allowance in any case for overhead or profit.

"If performance of the Contractor's work is delayed as the result of the failure of the owners to remove or relocate utility facilities within the specified times, a commensurate extension of time will be granted.

"The Contractor will be required to work around utility facilities that are to be relocated and relocation has not been completed, and except as provided above, no additional compensation will be allowed by reason of such inconvenience.

"When it can be determined in advance that it will be necessary to move or alter any utility facility to permit the prosecution of construction operations, such utility facility will be shown on the plans or specified in the special provisions, and the work involved will be performed either by others at no cost to the Contractor or shall be performed by the Contractor and will be paid for as a contract item or as extra work as provided in Subsection 104.04 or 109.04 of these specifications. If a utility facility is encountered which is not shown on the plans or mentioned in the special provisions and which must be moved or altered to permit prosecution of construction operations, the work involved will be performed either by others at no cost to the Contractor or shall be performed by the Contractor and shall be paid for as extra work as provided in Subsection 104.04 or 109.04. However, such moving or altering of a utility facility as covered by this provision shall not be construed to include the moving or altering of any utility facility or other improvement solely for the convenience and benefit of the Contractor."

June 6, 1961, respondents, in accordance with the requirements of the contract, submitted to appellants a schedule of construction, setting forth in a construction progress time table the various phases of the construction work. Appellants accepted the schedule of construction without change or recommendation and, according to respondents, with full knowledge that the schedule of construction was dependent upon the timely removal of certain utility poles then obstructing the right-of-way and work area. Appellants allege that as early as September, 1959, Pacific Power & Light Company was notified of the project and of the necessity for relocating their power poles along the project.

After a formal hearing was had upon the issue of moving of utilities on the project, appellants, on April 13, 1961, entered an order requiring removal of the utilities, which order was sent to all companies having utilities on the project.

Respondents commenced construction as planned, but on June 22, July 5, and July 28, they notified appellants that the utility poles were interfering with performance of the contract. Respondents stated in their letter of notification that the failure to remove the poles would materially change the construction schedule and add materially to respondents' total costs. Ap-

pellants failed to cause the removal of the utility poles until September 1, 1961.

October 26, 1961, appellants extended the completion date of respondents' contract thirty-six additional working days as a result of the delay in removing the utility poles.

April 2, 1962, respondents, pursuant to Section 105.07 of the Standard Specifications, filed a claim with appellants for $47,-550.94, for idle time of men and equipment and extra costs of moving equipment, resulting from the delay in removing the utility poles. April 23, 1962, respondents filed a supplemental claim for $158,405.65, arising from the same facts.

July 2, 1962, the State Highway Engineer approved payment to respondents of $38,-263.04 as compensation for additional costs incurred by the delay in the removal of the utility poles, which sum respondents accepted as settlement of the claim of April 2, 1962; at the same time the State Highway Engineer denied the supplemental claim of $158,405.65. He approved, in a different action, additional compensation of $3,402.90 for costs caused by the delay. July 10, 1962, respondents acknowledged settlement of their original claim of April 2nd, and appealed to appellants the State Highway Engineer's denial of the supplemental claim of $158,405.65.

Appellants denied respondents' claim for additional compensation. September 23, 1963, respondents submitted their claim to the State Board of Examiners, requesting full payment of the sum of $167,693.55, which claim the State Board of Examiners denied in writing.

February 7, 1964, respondents petitioned this Court, requesting that the Idaho Board of Highway Directors be directed "to perform their duties" and approve and certify respondents' claim to the State Auditor, or that original jurisdiction be assumed and judgment be entered in favor of respondents for $167,693.55. This Court denied respondents' petition.

On March 20, 1964, respondents commenced this action in the Ada County dis-

trict court. Appellants moved to dismiss respondents' complaint on the grounds that it failed to state a claim against appellants, that the district court does not have jurisdiction to determine claims against the State, and that the Idaho Board of Highway Directors is immune from liability in this action by reason of sovereign immunity. December 1, 1964, the district court entered a memorandum decision denying appellants' motions to dismiss respondents' complaint.

April 6, 1965, appellants filed a motion for summary judgment, which the district court denied. After trial, and on March 1, 1967, the district court filed its memorandum decision, which in part recites:

"* * * the contractor's plan contemplated the performance of all of the remaining contract operations in a continuous sequence rather than in a piecemeal operation. Thus, as the contractor moved east on the project removing the unclassified excavation, it would have followed with the structural excavation that was necessary in the traveled portion of the roadway to put in the underground facilities which went under or across the roadway.

"I have concluded that even though there may have been other feasible plans, perhaps plans which were even more feasible, the contractor's proposed plan was entirely feasible; and it was delayed and obstructed in pursuing this plan by the presence of the utility facilities. * * * As a result of the presence of the utility poles, the contractor had to change its method of haul for the unclassified excavation and could not complete this item at the beginning of the construction period as it had proposed. Consequently its plan of operation had to be changed and it ended up doing the job on a piecemeal basis instead of in the continuous sequences which had been planned. Not only did this force the contractor to spend considerable additional time in performing the contract with attendant increased expenses, but many of the operations which it had contemplated completing

during the months of June, July and August, when the weather was good, had to be performed in a period of adverse and inclement weather, which caused a multitude of problems.

"Thus, as a result of the problems resulting from the delay in relocation of the utility facilities, the contractor incurred costs in excess of those costs it would have had if the delays had not occurred. * * *"

May 11, 1967, the court rendered judgment against the Idaho Board of Highway Directors for the sum of $25,863.40.

Appellants' several assignments of error raise well-defined legal issues.

First, appellants contend that the Idaho Board of Highway Directors, as a state agency, is immune from liability in this action by reason of the sovereign immunity of the State of Idaho.

We have held that the state cannot be sued without its consent, and that such consent cannot be implied but must be expressly given by constitutional or statutory provisions. Petersen v. State, 87 Idaho 361, 393 P.2d 585 (1964); Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609 (1957); Nordby v. Department of Public Works, 60 Idaho 475, 92 P.2d 789 (1939); State v. Parsons, 58 Idaho 787, 80 P.2d 20 (1938); Davis v. State, 30 Idaho 137, 163 P. 373 (1917); Thomas & Faris v. State, 16 Idaho 81, 100 P. 761 (1909); Hollister v. State, 9 Idaho 8, 71 P. 541 (1903).

We have recognized, however that our constitutional provision prohibiting the taking of property for public use until just compensation has been paid waives the immunity of the state from suit where the state took or damaged the property without first condemning it. Idaho Const. Art. 1, Sec. 14; Renninger v. State, 70 Idaho 170, 213 P.2d 911 (1950). See Mabe v. State, 83 Idaho 222, 360 P.2d 799 (1961); Hughes v. State, 80 Idaho 286, 328 P.2d 397 (1958).

In the instant action, the state, acting through appellants, entered into a highway construction contract with respondents and allegedly breached the contract to the damage of respondents. Appellants refused to entertain part of respondents' damage claim, and now assert the defense of sovereign immunity.

Respondents contend that when the state enters into authorized contractual relations, it thereby waives immunity from suit arising out of such relationship.

The Supreme Court of Indiana in 1891, in Carr v. State ex rel. Coetlosquet, 127 Ind. 204, 26 N.E. 778, 779, 11 L.R.A. 370, made the following pertinent assertion:

"In entering into the contract it [the state] laid aside its attributes as a sovereign, and bound itself substantially as one of its citizens does when he enters into a contract. Its contracts are interpreted as the contracts of individuals are, and the law which measures individual rights and responsibilities measures, with few exceptions, those of a state whenever it enters into an ordinary business contract * * *. The principle that a state, in entering into a contract, binds itself substantially as an individual does under similar circumstances, necessarily carries with it the inseparable and subsidiary rule that it abrogates the power to annul or impair its own contract. It cannot be true that a state is bound by a contract, and yet be true that it has power to cast off its obligation and break its faith, since that would invoke the manifest contradiction that a state is bound and yet not bound by its obligation. * * *"

Courts in other jurisdictions are in accord with the ruling of the Supreme Court of Indiana and have held, in effect, that where the legislature has by statute authorized the state to enter into certain contracts, the state upon entering into such a contract thereby consents to be sued if it breaches the contract to the damage of the other contracting party. See Souza & McCue Construction Company v. Superior Court of San Benito County, 57 Cal.2d 508, 20 Cal. Rptr. 634, 370 P.2d 338 (1962); Ace Flying Service, Inc. v. Colorado Dept. of Agriculture, 136 Colo. 19, 314 P.2d 278 (1957);

Colorado Racing Commission v. Brush Racing Ass'n, 136 Colo. 279, 316 P.2d 582 (1957); Means v. State Board of Education, 127 Mont. 515, 267 P.2d 981 (1954); Chapman v. State, 104 Cal. 690, 694–696, 38 P. 457 (1894); Regents of University System of Georgia v. Blanton, 49 Ga.App. 602, 176 S.E. 673, 675 (1934); Todd v. Board of Educational Lands and Funds, 154 Neb. 606, 48 N.W.2d 706, 710 (1951).

■ We agree with this principle. To deny the right to sue in such a contractual situation would be to deprive the damaged contracting party of property without due process of law. U.S.Const. Amendments 5 and 14. Accordingly, we hold that where, as here, the state has entered into a contract pursuant to legislative authorization, the state has consented to be sued for alleged breaches of its contractual responsibilities and cannot invoke the protection of sovereign immunity.

Second, appellants argue that the district court had no jurisdiction to entertain respondents' claim. They argue that the claim at most would constitute the basis for an action for a recommendatory judgment of the Supreme Court, pursuant to Idaho Constitution, Art. 5, Sec. 10, which reads:

> "Sec. 10. Jurisdiction over claims against the state.—The Supreme Court shall have original jurisdiction to hear claims against the state, but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next session of the legislature for its action."

This court held, in Thomas & Faris v. State, supra, that Art. 5, Sec. 10, Idaho Const., confers not only original, but also exclusive, jurisdiction upon the Supreme Court to hear and determine actions or claims against

the state. See Jewett v. Williams, 84 Idaho 93, 369 P.2d 590 (1962); Padgett v. Williams, 82 Idaho 114, 350 P.2d 353 (1960). We held in Jewett v. Williams that such constitutional provision contemplates unliquidated claims which have not been previously authorized by the legislature. See also Padgett v. Williams, supra.

■ Despite the trial court's finding to the contrary, the action at bar is one imposing a claim against the state. However, the nature of the claim is such that it was within the contemplation of the legislature and thus in this instance implicitly authorized by that body. See I.C., Tit. 40, ch. 1.

■■ We therefore hold that where the state has waived immunity to be sued by entering into and assuming legislatively authorized contractual obligations, it incurs legal rights and responsibilities similar to those of the individual citizen, and an action for breach of contract against the state may be brought in the district court, which is the proper tribunal for adjudicating all cases in law and equity. Art. 5, Sec. 20, Idaho Const. To the extent that we have heretofore stated that our jurisdiction to hear contract actions constituting claims against the state is exclusive, as well as original, those pronouncements are overruled. Art. 5, Sec. 10, Idaho Const.[1]

■ Third, appellants argue that the provisions of Section 105.07 of the Standard Specifications are exclusive and controlling, that respondents have been paid all the compensation provided for therein and that they are not entitled to any further sum. Appellants, in other words, contend that the trial court erred in awarding respondents $25,863.40 in addition to the damage settlement previously made by appellants for the reason that the Standard Specifications ex-

---

1. e. g. We stated, in Renninger v. State, supra, 70 Idaho at p. 177, 213 P.2d at p. 915, that, "It being thus firmly established and announced by the Constitution that the owner of property is entitled to compensation before it can be taken, to force him for relief to file a suit for recommendatory judgment, Art. 5, Sec. 10, before the Supreme Court, almost denies relief because such procedure is uncertain, problematical, dilatory, and based purely on sufferance and not on right."

pressly preclude any such additional compensation. See Paragraph 5 of 105.07 supra.[2]

■ The trial court found, and appellants do not contest, that the state had the affirmative duty of arranging with the owners of the utility poles for the relocation of such facilities, and of scheduling such relocation so as to coordinate the relocation and the construction operations specified in and required by the contract. The trial court further found that appellants breached their duty by failing to cause the timely removal of the poles before the contractor had incurred the damages. The specific question presented is whether the contractor is barred under the provisions of Section 105.07 of the Standard Specifications from claiming damages in addition to those already paid by the state under that section. If the contracting parties agreed in the contract as to the measure of damages to be paid by appellants for their breach of duty, and the contractor had been paid its damages in accordance with such measure, then the contractor is barred from recovering any additional damages. Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630 (1964); J. R. Simplot Company v. Chambers, 82 Idaho 104, 350 P.2d 211 (1960); Nuquist v. Bauscher, 71 Idaho 89, 227 P.2d 83 (1951); Underground Const. Company v. Sanitary Dist. of Chicago, 367 Ill. 360, 11 N.E.2d 361, 115 A.L.R. 57 (1937). However, as stated by the trial court, if the breach of duty by appellants was a risk which respondent contractor did not contractually agree to assume, or which was not within the contemplation of the parties, then the contractor's claim should not be barred or limited by the damage provisions of Section 105.07. See Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 543, 23 S.Ct. 754, 47 L.Ed. 1171 (1903); New Amsterdam Casualty Co. v. Mitchell, 325 F.2d 474 (5th Cir. 1963); Sitnick v. Glazer, 11 Ill.App.2d 462, 138 N.E.2d 84

(1962); Cain Shoes, Inc. v. Gunn, 194 Kan. 381, 399 P.2d 831 (1965); also Simpson on Contracts, 2nd Ed., p. 396; Williston on Contracts, 161.5, Rev.Ed., pp. 3805–3806.

The trial court held that appellants' specific breach of contract resulted from its failure to arrange a time schedule for removal of the poles, and that such breach was not one covered by the provisions of the contract. By such narrow reading of the contract, the trial court held that additional damages incurred by respondents as a result of the breach could be allowed if proven. The learned trial court's decision in this regard is significant, and reads in pertinent part as follows:

"I recognize, of course, that in terms of causation, the failure of the State to schedule the time or times for removal or relocation of the utility facilities could be as responsible for a delay in such removal or relocation, with consequent loss to the contractor, as the failure of the utility owner to comply with the State's schedule for removal. However, the language used is inappropriate to cover a loss caused by failure of the State to do the necessary scheduling. If the damage provision of Section 105.07 were intended to unambiguously cover not only loss to the contractor caused by failure of the utility owner to perform the relocation or removal in accordance with the time schedule fixed by the State but also loss to the contractor caused by failure of the State to perform its duty in connection with scheduling the removal or relocation, it would have been very easy to provide expressly for any loss resulting either from the failure of the State to schedule the removal or relocation by specifying the time or times for such removal or relocation or from the failure of the owner to remove or relocate the facilities within the specified time or times. Since we are dealing in Section 105.07 with con-

2. "Actual loss shall be understood to include no items other than necessary payments for idle time of men, idle time of equipment, cost of extra moving of equip-

ment, and cost of longer hauls, with no allowance in any case for overhead or profit."

tract language chosen by the State, doubtful language must be construed most strictly against the State (Big Butte Ranch, Inc., v. Grasmick [91 Idaho 6], 415 P.2d 48 (Idaho, 1966); Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976; Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844; Ries v. Pacific Fruit & Produce Co., 50 Idaho 140, 294 P. 336). Under such a strict construction I can only conclude that the delay contemplated by the parties by Section 105.07 is a delay resulting solely from a failure of the utility owner to comply with the time schedule fixed by the State for the removal or relocation of the utility facilities. This interpretation is borne out by the later paragraph in Section 105.07 which gives additional relief to the contractor for such a delay by authorizing an extension of time for completion of the contract. In that paragraph the following language is used: 'If performance of the Contractor's work is delayed as the result of the failure of the owners to remove or relocate utility facilities within the specified times, a commensurate extension of time will be granted.' "

" * * * The contractor would be reasonably led to believe by the language of Section 105.07 that he is risking being limited to the damages specified in Section 105.07 only if the utility owner fails to comply with the State's schedule of removal or relocation. The contractor could not reasonably anticipate from this language that he is taking the additional risk that the State might not even schedule the removal to be accomplished in advance of construction operations. * * *"

▆ The trial court's legal rationale is that the actual breach committed by the State comes within two exceptions to usual contract principles of liability, i. e., where the delay results from causes not within the contemplation of the parties or, where the delay is caused by active or direct interference by the contractee, the limited or "no damage" provisions of the contract need not be adhered to. Gasparini Excavating Co. v. Pennsylvania Turnpike Commission, 409 Pa. 465, 187 A.2d 157 (1963); Sheehan v. City of Pittsburg, 213 Pa. 133, 62 A. 642 (1905); Cauldwell-Wingate Co. v. State, 276 N.Y. 365, 12 N.E.2d 443 (1938); City of Dallas v. Shortall, 87 S. W.2d 844 (Tex.Civ.App.1935); Northeast Clackamas County Elec. Co-op. v. Continental Cas. Company, 221 F.2d 329 (9th Cir. 1955); see anno., 10 A.L.R.2d 801. The trial court concluded that appellants' failure to schedule the relocation of the utility poles was not contemplated by the parties and, further, that the act of appellants in ordering the contractor to proceed with construction in the face of the appellants' failure to schedule the relocation, constituted active interference on the part of appellants. Accordingly, the trial court held that respondents were not barred by the limitation on damages provided by Section 105.07 of the Standard Specifications.

The trial court's basic distinction between failure of the utility owner to remove the poles and appellants' failure affirmatively to schedule the removal, is the most reasonable interpretation of the applicable portions of Section 105.07. The section covers, not loss from any or every delay in removal or relocation, but only loss resulting from failure to cause removal or relocation as provided in the first paragraph of the section. The first paragraph provides that appellants, acting through the State Highway Engineer, shall cause the removal or relocation to be accomplished by the owner of the utility, "within a specified time or times." The damage provision, in specifying the cause of the loss in terms of loss sustained "as a result of utility facilities not being removed or relocated as above provided" most reasonably refers to loss resulting from the failure of the utility owner to remove the facilities within the time or times specified. For the foregoing reasons, we are constrained to agree with the trial court's interpretation of the contract, and hold that respondents are not barred by the limitation on damages provided by Section 105.07 of the specifications from claim-

**416**

ing damages in addition to those already paid by the state.

■ Having determined that respondents are not precluded from recovering additional damages under the construction contract, and respondents having sustained the burden of proof of damages incurred by reason of appellants' breach of the contract, we therefore uphold the trial court's decision in respondents' favor.

Judgment affirmed. Costs to respondents.

TAYLOR, McFADDEN and SPEAR, JJ., concur.

McQUADE, J., sat at the hearing, but did not participate in the decision.