595 A.2d 77

**GRIMME COMBUSTION, INC., Appellant,**

**v.**

**MERGENTIME CORPORATION and Insurance Company of North America, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 28, 1991.

Filed July 2, 1991.

Reargument Denied Sept. 5, 1991.

---

Robert T. Carlton, Jr., King of Prussia, for appellant.

Carl H. Hanzelik, Philadelphia, for appellees.

Before CAVANAUGH, MCEWEN and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The plaintiff-appellant Grimme Combustion, Inc. instituted the instant action to seek damages allegedly arising out of its work as a subcontractor on a highway construction project in Philadelphia. Defendant-appellee Mergentime Corporation was the general contractor on that Pennsylvania Department of Transportation (hereinafter "PennDOT") project, and defendant-appellee Insurance Company of North America (hereinafter "INA") acted as a surety in providing a payment bond for Mergentime with regard to the project. After the close of the pleadings, the defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to join an indispensable party. The plaintiff filed a response in opposition to the motion, and the defendants filed a reply memorandum. After consideration, the trial court entered an order granting the defense motion to dismiss. It did so based upon its conclusion that PennDOT was an indispensable party in the litigation. The plaintiff thereafter instituted the instant appeal.

In the absence of an indispensable party, a court lacks jurisdiction over matters before it. *Columbia Gas Transmission Corp. v. Diamond Fuel Co.*, 464 Pa. 377, 379, 346 A.2d 788, 789 (1975). A trial court order dismissing an action because a plaintiff fails to join an indispensable party is a final and appealable order, as it puts the

parties out of court without reaching the merits of the action. *Damico v. Royal Insurance Company*, 383 Pa.Super. 239, 556 A.2d 886 (1989). In our review of a trial court order dismissing an action on such a basis, we must take as true all well-pleaded facts revealed in the complaint and exhibits properly attached thereto. *Witmer v. Exxon Corporation*, 260 Pa.Super. 537, 394 A.2d 1276 (1978), affirmed 495 Pa. 540, 434 A.2d 1222 (1981); *Com. ex rel. Shumaker v. New York & Pennsylvania Co., Inc.*, 367 Pa. 40, 79 A.2d 439 (1951). It is evident that on this appeal we must carefully review the plaintiff's pleadings as well as any appropriate exhibits.

Plaintiff's complaint included five counts. Count I asserted that in January 1985, Mergentime entered into a contract with PennDOT for the improvement of a certain section of a state highway in the City of Philadelphia known as the Schuylkill Expressway. In conjunction therewith, INA provided a payment bond on behalf of Mergentime. In February 1985, Mergentime entered into a written subcontract with plaintiff Grimme, pursuant to which Grimme agreed to perform work known as pressure mortar surfacing for the substructure on specific portions of the project. Subsequently, Mergentime and Grimme agreed to expand the subcontract to include repair work on deteriorated concrete at certain locations on the job. Grimme claimed it had completed all of its work under the subcontract as of November 1986. Further, the plaintiff alleged that as of January 1987, it had submitted and defendant Mergentime had approved invoices totalling $272,392.35, of which Mergentime had paid $224,761.79, leaving the sum of $47,630.56 due and owing. In addition, Grimme asserted that defendant Mergentime had agreed, under the subcontract, to pay Grimme a ten percent increase in unit prices for all work performed after May 1, 1986, and that by virtue thereof, Mergentime allegedly owed Grimme an additional $17,-736.64. Based upon these allegations, the plaintiff maintained that it was owed a total of $65,367.20, for which both Mergentime, as principal, and INA, as surety, were jointly

and severally liable. In addition, the plaintiff sought additional interest, costs and attorney fees.

Count II of the complaint repeated all of the foregoing assertions of fact, and also alleged that Mergentime was obligated to assure that Grimme's work would be coordinated with other work on the project to assure that Grimme could perform its work while various ramps were closed to traffic, and so that Grimme could perform its work from staging areas contiguous with the actual work sites. Grimme asserted that Mergentime had failed in such coordination obligations, such that Grimme was forced to perform its work when the ramps were not closed to traffic, and further, was required to work from staging areas far removed from the sites of its construction responsibilities. The plaintiff also contended that compounding the fact that it was forced to work from remote staging areas was the fact that PennDOT noted additional repairs to be performed, which were not included as part of Grimme's original subcontract.

The plaintiff detailed the alleged damages which resulted from each incident of alleged failure in coordination responsibilities by Mergentime. Thus, the plaintiff asserted a claim for $264,188.68 for cost overruns on one area of ramp repairs denoted as the South Street ramps, and $46,075.88 for cost overruns on a second area of ramp repairs, designated as the University Avenue ramps. With respect to this ramp work, the plaintiff's claims were based upon the contention that Mergentime coordination failures caused it to work from and move to remote staging or mobilization areas. The balance of the Count II claims, relating to so-called Mainline repairs, allegedly resulted from a combination of the Expressway being open to traffic during the time of the repairs, the requirement that Grimme work from an excessively distant staging area, an excessive number of unanticipated repairs which had to be made, and extra work assigned to Grimme as a result of requests by PennDOT for a significant number of unexpected repairs. The plaintiff contended it experienced out-of-pocket ex-

penses for some of this Mainline work amounting to $161,-714.78, and costs, overhead and profits in the amount of $193,985.42 for other work. In addition, the plaintiff claimed a total of $176,250.00 for lost profits and other problems relating to all three portions of the project.

In Count III, the plaintiff reasserted the allegations set forth in Count I of the complaint. However, in Count III, Grimme only sought a judgment against Mergentime. The Count III claim was for $65,367.20, the same amount as sought in Count I.

Count IV also asserted a claim only against Mergentime. In that regard, Count IV repeated all of the claims for damages, in the same amounts, as were set forth in Count II of the complaint.

In Count V, the plaintiff alleged that by reason of all of the matters alleged in the foregoing sections of the complaint, its working capital and net worth had been impaired such that it had lost all of its bonding capacity. Accordingly, Grimme maintained that it had an inability to obtain work for which contract performance and/or payment bonds would be required. This purported lack of bonding capacity allegedly caused Grimme to suffer losses in an amount in excess of $549,675.59, and would in the future cause it to suffer additional damages. A recovery for these alleged past damages and expected future harm was sought only against Mergentime in Count V.

In addition to the counts in the complaint, it is appropriate to refer to a particular section of the Grimme–Mergentime subcontract, which was an exhibit to the complaint. In Attachment B to the subcontracting agreement, in Section 6, entitled "Delays", the following is set forth:

Section 6. Delays (a) In the event the Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor, or other Subcontractors, he may request an extension of the time for the performance of same, as herein-after (sic) provided, but shall not be entitled to any increase in the Subcontract price or to damages or additional compensation as a

consequence of such delays or interference, except to the extent that the prime contract entitles the Contractor to compensation for such delays and then only to the extent of any amounts that the Contractor may, on behalf of the Subcontractor, recover from the Owner for such delays.

After the plaintiff filed its complaint, the defendants filed preliminary objections. *Inter alia,* in addition to claiming that none of the counts in the complaint stated a claim upon which relief could be granted, the defendants sought to stay the proceedings as to Counts II and IV, "... pending the outcome of proceedings with PennDOT." The preliminary objections did not specify the nature of the PennDOT proceedings.

The trial court overruled the preliminary objections of the defendants. In doing so, the trial court noted that defendants' demurrer to Counts II and IV of the complaint relied exclusively on the delays section of the subcontract, recited above. Rejecting the defense contentions based upon that contractual provision, the trial court stated in an opinion:

> Defendants' reliance upon this part of the Subcontract ignores the long-standing rule that "exculpatory provisions in a contract cannot be raised as a defense where (1) there is an affirmative or positive interference by the owner with the Contractor's work, or (2) there is a failure on the part of the owner to act in some essential matter necessary to the prosecution of the work. *Coatesville Contractors & Engineers, Inc. v. Borough of Ridley Park,* 509 Pa. 553, 558, 506 A.2d 862 (1986) *citing Gasparini Excavating v. Pennsylvania Turnpike Commission,* 409 Pa. 465, 187 A.2d 157 (1963). In the case at bar, plaintiff has alleged just such interference and failure on the defendants' part and therefore the contract language is inapplicable. Therefore, the motion to dismiss and/or stay Counts II and IV must be denied.

Mergentime and INA thereafter appealed the trial court's dismissal of their preliminary objections to our court. In a memorandum filed March 20, 1989, our court quashed the appeal, based upon a determination that it was a non-

appealable interlocutory order. *Grimme Combustion, Inc. v. Mergentime Corporation,* 385 Pa.Super. 260, 560 A.2d 793. Subsequently, the Pennsylvania Supreme Court dismissed a petition for allowance of appeal which had been filed by the defendants.

Thereafter, the defendants filed an answer to the plaintiff's complaint, with new matter and a counterclaim. The plaintiff filed a reply with new matter to defendants' new matter and counterclaim. Mergentime and INA filed a response to the plaintiff's new matter to defendants' counterclaim.

On January 5, 1990, the defendants filed their motion to dismiss for lack of subject matter jurisdiction and for failure to join an indispensable party. As noted at the outset of this opinion, Grimme filed a response to the motion to dismiss and the defendants responded with a reply memorandum. Despite his earlier conclusion that Section 6(A) of the Grimme–Mergentime subcontract, pertaining to delays, was inapplicable to exculpate the defendants from liability, the same trial court judge who had considered the preliminary objections ruled that this contractual provision mandated a finding that PennDOT was an indispensable party because a determination of its liability was necessary in order to adjudicate Grimme's claims. In ordering the dismissal of the action, the trial court did not analyze any of the separate counts of the complaint.

The proper resolution of this appeal requires an understanding of our rules relating to indispensable parties. Two Rules of Civil Procedure are pertinent. Pa.R.Civ.P. 2227, relating to compulsory joinder, provides in Section (a): "Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants." Rule 2227 requires the dismissal of an action brought without the joinder of a necessary party as a defendant. *Moorehead v. Lopatin,* 300 Pa.Super. 81, 445 A.2d 1308 (1982). Pa.R.Civ.P. 1032 provides that a party waives all defenses and objections which are not raised either by preliminary objection, answer or reply except: "(2)

that whenever it appears by suggestion of the parties otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall dismiss the action."

A party is to be considered indispensable when its rights are so connected with the claims of the litigants that no decree can be made without impairing its rights, and it must be made a party to protect such rights. *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988); *Columbia Gas Transmission Corp. v. Diamond Fuel Co., supra.* If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. *Sprague v. Casey, supra.* In *Mechanicsburg Area School District v. Kline,* 494 Pa. 476, 481, 431 A.2d 953, 956 (1981), our Supreme Court set forth the following guidelines for determining whether a party is to be considered indispensable in pending litigation:

1. Do absent parties have a right or interest related to the claim?
2. If so, what is the nature of that right or interest?
3. Is that right or interest essential to the merits of the issue?
4. Can justice be afforded without violating the due process rights of absent parties?

It has been held that an inquiry into whether a party is indispensable is to be from the prospective of protecting the rights of the absent party, not from the view of whether the joinder or nonjoinder of a party would make the matter more difficult to litigate. See *E–Z Parks, Inc. v. Philadelphia Parking Authority,* 103 Pa.Cmwlth. 627, 521 A.2d 71 (1987), appeal denied, 517 Pa. 610, 536 A.2d 1334 (1987).

Mindful of these concepts and guidelines, we shall consider the propriety of the trial court's order dismissing the plaintiff's complaint. Although the trial court did not do so, we deem it appropriate to analyze the separate counts of

the complaint to determine whether PennDOT was properly found to be an indispensable party.

■ Count I of the complaint, as related above, essentially averred that the plaintiff had carried out all of its obligations under the subcontract, and was therefore entitled to be paid the balance due for the work it performed. The plaintiff sought a recovery against both Mergentime and its surety, INA. There is nothing in the record to suggest that PennDOT has any right or interest related to that claim, let alone whether such right or interest is essential to the merits of the issue. Moreover, no basis has been established to indicate that a resolution of such claim, without the participation of PennDOT in the litigation, would violate any of PennDOT's due process rights. Accordingly, it is clear that there was no justification for the trial court's dismissal of Count I of the complaint.

The same determination is obviously applicable to Count III of the complaint. That count merely restated the same allegations which were presented in Count I, but set forth a claim only against Mergentime. Obviously, the absence of INA as a party against whom relief is claimed in Count III does not affect the conclusions reached as to the lack of indispensability with regard to PennDOT. Count III, like Count I, merely comprises a claim to a right of payment under the Grimme–Mergentime contract. Therefore, we conclude that the trial court further erred in granting a dismissal as to Count III of the complaint.

■ Counts II and IV involve identical claims. The former count raises them against both defendants, while the latter maintains them only against Mergentime. As described above, Count II describes claims for damages as to three separate parts of the project. With reference to the South Street and University Avenue ramps parts of the project, Grimme maintained that Mergentime had violated its obligations under the subcontract to coordinate the work in an efficient manner, and to assure that Grimme could perform its work from staging areas contiguous with the

actual work sites. Again, we can discern no aspect of such claims that might involve a right or interest of PennDOT, and find no reason to hold that justice could not be afforded concerning such claims without violating PennDOT's due process rights.

Mergentime and INA contend that Section 6A of the subcontracting agreement, relating to delays, precludes any claim by Grimme for damages for alleged delays and interferences with its work, unless and until it is first established that Mergentime can recover for those claims from PennDOT. We believe that the trial court properly addressed that issue in overruling the preliminary objections of the defendants which were based upon that clause. In *Coatesville Contractors & Engineers, Inc. v. Borough of Ridley Park*, 509 Pa. 553, 506 A.2d 862 (1986) our Supreme Court addressed a similar issue. In that case, a contract between the plaintiff and the borough called for the contractor to remove silt from a lake bed. Prior to the job being initiated, the lake was drained, and the specifications in the contract provided that it would remain in that condition until all silt removal work had been completed. However, at the time the plaintiff was required to perform the work, water covered the site, occasioning extra expenses in the performance of the contract. The parties' contract included a no damages for delay provision which was analogous to that before our court in the instant case. The Supreme Court stated the following with regard to the viability of such no delay damage provisions:

> The rule in Pennsylvania is that exculpatory provisions in a contract cannot be raised as a defense where (1) there is an affirmative or positive interference by the owner with the contractor's work, or (2) there is a failure on the part of the owner to act in some essential matter necessary to the prosecution of the work. *Gasparini Excavating Co. v. Pennsylvania Turnpike Commission*, 409 Pa. 465, 187 A.2d 157 (1963); See *Commonwealth of Pennsylvania, State Highway and Bridge Authority v. General Asphalt Paving Company*, 46 Pa.Cmwlth. 114,

405 A.2d 1138 (1979) (in spite of contract provisions excluding claims for additional compensation due to delay caused by the owner, contractor awarded additional compensation for three month delay caused by Commonwealth's direct interference in failing to have a water main expeditiously relocated), and *Commonwealth of Pennsylvania, Department of Highways v. S.J. Groves and Sons Co.*, 20 Pa.Cmwlth. 526, 343 A.2d 72 (1975) (exculpatory provisions of contract held not to prevent recovery by contractor of increased costs in performing due to a fourteen week delay while AT & T relocated a coaxial conduit). "[W]here an owner by an unwarranted positive act interferes with the execution of a contract, or where the owner unreasonably neglects to perform an essential element of the work in furtherance thereof, to the detriment of the contractor, [the owner] will be liable for damages resulting therefrom." *Henry Shenk Company v. Erie County*, 319 Pa. 100, 178 A. 662 (1935). 509 Pa. at 560, 506 A.2d at 865–6.

While the claim in the *Coatesville Contractors* case involved an action by a contractor directly against the owner of the project, in the instant case Mergentime and INA stand in no different legal position than did the defendant borough in that case. The defendants here seek to rely on a similar exculpatory contract provision as a defense in a situation where the plaintiff has alleged that Mergentime, by its own affirmative interference with the work, or its failure to act in an essential matter necessary for the prosecution of the work, caused the plaintiff to suffer losses. In light of the fact that the plaintiff's allegations must be taken as true, for the purpose of ruling on the motion for dismissal, the defendants may not rely upon the no delay damages provision of the agreement in support of their request for dismissal.

We therefore conclude that there was no basis for the trial court to dismiss the allegations of the plaintiff's complaint regarding the South Street and University Avenue

ramps work. The plaintiff must be permitted to pursue such claims further in this litigation.

 A third portion of the claims raised by the plaintiff in Counts II and IV, regarding the Mainline repairs, raised a suggestion of possible PennDOT interest or involvement in the matters in dispute. The plaintiff alleged that as originally anticipated, it was to perform the Mainline repair work while the westbound lanes of the road were closed to traffic, thereby allowing it direct access to its work areas. However, it was asserted that by the time PennDOT commenced marking activities for repairs under the Mainline, and Grimme could commence its labors there, such work was completely out of sequence with the rest of the work on the project, and had to be performed while the westbound lanes were open. Thus, according to the complaint, Grimme was required to perform the work marked out under the Mainline from remote staging areas, much further from the work site than had been originally and reasonably anticipated. Further, the complaint asserted that the inefficiencies which resulted from the remoteness of the staging areas were compounded by the fact that PennDOT began to mark matters for repairs which had not been included as a part of the original subcontract. Grimme claimed it was required to perform significant extra work, at unexpected locations, which entitled it to additional compensation.

Although the third part of Count II of the complaint alleges some involvement by PennDOT in the circumstances leading to the accrual of additional claims by Grimme, all of the plaintiff's claims are against general contractor Mergentime and its surety, INA, and no allegation of a right of recovery against PennDOT is raised. Again, there is no apparent right or interest of PennDOT related to such claims. The defendants assert that PennDOT has an interest in the outcome of these claims, as it will ultimately be held liable for any recovery by Grimme. We are not prepared to make the logical leap that such a conclusion would require. It is entirely conceivable that any right of

recovery by the subcontractor against the general contractor and/or its surety regarding such matters would not result in any corresponding right of the general contractor to maintain a successful claim against PennDOT for all or some of the amounts Grimme might recover under Count II of its complaint. Thus, we cannot hold that any right or interest of PennDOT is essential to the merits of the issues raised, nor is there any ground for finding that justice cannot be afforded without violating due process rights of PennDOT. It is evident that the trial court erred in dismissing the claims raised by Grimme in the third part of Count II of its complaint.

As discussed above, Count IV comprises a repetition of the claims raised in Count II by the plaintiff, but in Count IV the plaintiff asserts a right of recovery only against Mergentime, and not against both the general contractor and INA. That distinction does not alter the conclusion that we have reached concerning the issue of whether PennDOT must be considered an indispensable party. Thus, we must also reverse the trial court's dismissal of Count IV of the complaint.

Count V likewise contains claims only against Mergentime. It repeats all material allegations of Counts I and II. The complaint then asserts that by reason of the circumstances alleged, its working capital and net worth had been impaired to the extent that it lost its bonding capacity, and thereby, its ability to obtain work for which a performance or payment bond was required. Further, it alleges that the loss of bonding had caused Grimme to suffer significant damages and would continue to cause Grimme to suffer future additional damages.

None of the allegations raised in Count V of the complaint appear to involve any right or interest of PennDOT, and there is no suggestion that justice could not be afforded on such claims without violating PennDOT's due process rights. In such circumstances, we again conclude that PennDOT may not be considered an indispensable party.

Therefore, we find that the trial court committed error in dismissing Count V of the plaintiff's complaint.

■ Finally, we address the argument of Mergentime and INA that the trial court's order must be affirmed on the basis that the Pennsylvania Board of Claims has exclusive jurisdiction over the claims raised by Grimme in this litigation. This contention was raised in the trial court by the defendants, but was not addressed by the trial court judge in ruling on the motion for dismissal. However, as the defendants point out, an order of a lower court may be affirmed on any ground, as long as the result is correct. *Gwinn v. Kane*, 465 Pa. 269, 348 A.2d 900 (1975); *Coatesville Development Company v. United Food and Commercial Workers, AFL-CIO*, 374 Pa.Super. 330, 542 A.2d 1380 (1988). Moreover, we recognize that objections to the subject matter jurisdiction of a court may be raised at any stage in the proceedings by a party, or by the court on its own initiative. *Commonwealth v. Helms*, 352 Pa.Super. 65, 506 A.2d 1384 (1986).

The defendants point out in their brief that the Board of Claims has exclusive jurisdiction over claims against an agency of the Commonwealth arising from contracts entered into by the Commonwealth. See Act of October 5, 1978, P.L. 1104, No. 260, § 3, 72 Pa.S.A. § 4651-4. Although we recognize the exclusivity of such jurisdiction when claims are made against an agency of the Commonwealth, based upon contracts entered into by the Commonwealth, that is clearly not the nature of the instant proceeding. The Commonwealth has not been made a party to this litigation by the plaintiff, and the subcontract in issue is not one which was entered into by the Commonwealth.

However, the defendants claim that the exclusive jurisdiction of the Board of Claims also extends to claims by a subcontractor against a contractor if they arise from a contract issued by the Commonwealth. In support of that position, the defendants cite four Commonwealth Court cases. No extended recitation of the facts or holdings in such cases is necessary. Suffice it to note that in all four

cases, the Commonwealth or one of its instrumentalities was a party defendant in the case. Such a factor materially distinguishes such cases from the instant litigation, in which neither the Commonwealth nor any of its subdivisions, agencies, or instrumentalities has been made a party defendant by the plaintiff.

The defendants have not cited a single decision standing for the purported rule that every dispute which arises between a general contractor and a subcontractor, on a Commonwealth project, must be resolved by the Board of Claims. In the absence of case law, or any statutory language supporting the defendants' position, in light of the fact that neither the Commonwealth nor any of its subdivisions is a party in this litigation, we find no merit in the defendants' position and reject it. The jurisdictional contention regarding the Board of Claims provides no basis for upholding the trial court's dismissal of the plaintiff's complaint.

Accordingly, the order of the trial court is hereby reversed and this case is remanded to the trial court for further proceedings. Jurisdiction is not retained.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting.

I respectfully dissent. In my opinion the court below properly dismissed the complaint for failure to join an indispensable party. The underlying contract was between PennDOT and Mergentime as the prime contractor on the Schuylkill Expressway project. The Insurance Company of North America issued a performance bond as Mergentime's security.

Mergentime subcontracted to Grimme the portion of its contract requiring pressure mortar surfacing of certain areas of the project. The subcontract contained a clause (Section 6(A)) providing that Grimme could recover damages for delays or interferences only if Mergentime's contract with PennDOT entitled Mergentime to compensation there-

for, and then only to the extent of the amount PennDOT had to pay:

> Section 6. Delays (A). *In the event the subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors,* he may [r]equest an extension of time for the performance of same ... *but shall not be entitled to any increase in Subcontract price or to damages or additional compensation* as to the consequence of such delays and interference *except to the extent that the prime contract entitles the Prime Contractor to compensation for such delays and then only to the extent that the Contractor may, on behalf of the Subcontractor, recover from the Owner for such delays.* (Emphasis added.)

Accordingly, PennDOT was inextricably involved in any dispute between Grimme Combustion, Inc. and Mergentime Corp. for delays, "and extra work assigned to Grimme as a result of requests by PennDOT for a significant number of unexpected repairs." (Majority, page 625).[1] In my opinion, PennDOT is an indispensable party as determined by the court below and I would affirm the order of the court.[2]

---

1. The majority stresses the fact that "in the instant litigation ... neither the Commonwealth nor any of its subdivisions, agencies, or instrumentalities has been made a party defendant by the plaintiff." (Pages 84–85) This is correct, and the reason that the complaint was dismissed by the court below is that PennDOT was not a party, but should have been.

 In the action in the Court of Common Pleas, the plaintiff did not name PennDOT as a party defendant because jurisdiction would then lie in the Board of Claims.

2. The appellee is not left without a forum. If PennDOT is joined, jurisdiction would lie with the Board of Claims which has exclusive jurisdiction over claims involving the Commonwealth arising from contracts entered into with the Commonwealth. 72 Pa.S. § 4651–4.