Commonwealth of Pennsylvania, Department of Highways (now Department of Transportation), Appellant, *v.* S. J. Groves and Sons Company, Appellee.

Commonwealth of Pennsylvania, Department of Transportation *v.* S. J. Groves and Sons Company, Appellant.

Argued June 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Edward A. Hosey,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for Commonwealth.

*Joseph J. Laws,* for S. J. Groves and Sons Company.

OPINION BY JUDGE ROGERS, July 29, 1975:

These are cross-appeals by the Commonwealth's Department of Transportation and S. J. Groves and Sons Company from a decision by the Board of Arbitration of Claims in litigation arising out of a highway construction contract entered into in 1961, under which the work was completed in 1964, with respect to which the contractor's claim was filed with the Board in 1968, and the Board's decision was rendered in 1974. The Board awarded Groves, the contractor, damages in the amount of $819,999.88, for extra costs and expenses on account

of the Department's failure to advise the contractor prior to the award of the contract that the latter would not have access to a portion of the construction site for 14 weeks while the American Telephone & Telegraph Company removed and replanted coaxial conduits.

The Department of Transportation presents three questions. The first is that the Board was without jurisdiction because Groves' claim was not filed within six months after it accrued as required by Section 6 of the Act of May 20, 1937, P.L. 728, 72 P.S. §4651.6. This argument can be quickly disposed of by reference to the specifications, Section 1.9.8 of which provides: "[t]he date on which the Secretary of Highways, through his authorized representative, notifies the contractor of the final certificate computations, or revised computations, as the case may be, shall be the date from which the time limit shall begin to run for the submission of claims to the Board of Arbitration of Claims named in the contract, and for such purpose shall be the date of completion of the contract." The Department's district engineer did not issue Final Certificate Computations until September 16, 1968, a date more than a year *after* Groves filed its claim with the Board. In *Lashner, Inc. v. Department of Highways,* 1 Pa. Commonwealth Ct. 486, 275 A.2d 403 (1971), we had occasion to consider the same contention by the Department in connection with a contract containing the same clause and there, by Judge CRUMLISH, JR., we wrote:

"It is clear that the specification incorporated into the contract which set the date of notification of computations as the date which commenced the running of the statute of limitations and which made notification a prerequisite to any suit under the contract, indicate the undeniable intent of both Lashner and the Commonwealth to consider the date of notification as the accrual date of any cause of action *under the contract.*" (Emphasis in original.) 1 Pa. Commonwealth Ct. at 490, 275 A. 2d at 405.

Hence, the claim was timely filed and the Board had jurisdiction.

Furthermore, the Commonwealth objected preliminarily that the claim was filed late; it never objected that it was prematurely filed. Indeed, after its preliminary objection to the original complaint was sustained with leave to Groves to plead again, the Department failed to file objections to Groves' amended complaint, but answered on the merits and went to trial. The first day of trial was a date after the issuance of the Final Certificate Computations.

The Department next contends that the Board erred in concluding that the Commonwealth committed constructive fraud by failing to notify Groves that a portion of the work area would be unavailable during 14½ weeks[1] while AT&T relocated its coaxial cables.

The Board made comprehensive findings which our careful review convinced us are supported by the evidence. The Board summarized these findings in its Discussion which we adopt as a brief but accurate account of the facts, as follows:

"There appears to be no substantial dispute of the relevant facts. Plaintiff was the successful bidder on a contract involving the improvement of Bristol Pike (Route #13) and intersecting roads and bridges in Bucks County. The area of the project involved in this dispute was at the intersection of Bristol Pike and Woodhaven Road. At this point, Bristol Pike runs in an east-west direction and Woodhaven Road in a north-south direction. Prior to the awarding lof this contract, these two roads intersected each other at ground level.

"The Defendant, Department of Highways, desired to have these two roads intersect at different levels to facilitate the flow of traffic in the area. This was to be

---

1. In the event AT&T occupied a portion of the site from August 8, 1961 until January 20, 1962.

accomplished by the excavation and lowering of Wood-haven Road and the construction of a bridge on Bristol Pike, allowing traffic on Bristol Pike to be carried over Woodhaven Road. In addition, under the contract, an interchange between the two roads was to be built.

"In order to perform the work under the contract, it was necessary to excavate a large quantity of earth located north of Bristol Pike and use said excavated material as fill in various areas south of Bristol Pike. However, one of the special requirements of the contract ... prohibited the contractor from crossing Bristol Pike with construction equipment and required the work north of Bristol Pike to await the completion of the bridge, so that the excavation could be moved by going under Bristol Pike.

"In order to construct the bridge on Bristol Pike, Plaintiff planned to direct traffic to the north side of Bristol Pike on a temporary run-around road. This would enable Plaintiff to excavate south of Bristol Pike and to construct the bridge. Upon completion of the bridge and placing it in service, excavation and the other work could proceed to the north without interfering with traffic on Bristol Pike.

"The special requirement referred to provided inter alia:

'. . . the contractor will be required to confine his excavating operations for the Woodhaven Interchange to the area (south of the temporary road) . . . until the proposed Bristol Pike Bridge over Woodhaven Road and the new pavement on Bristol Pike is opened to traffic and in use by the public.'

"Thus, the prompt and timely completion of the bridge on Bristol Pike was a matter of great importance; for the orderly prosecution of the entire project required access to the area north of Bristol Pike at the earliest possible time.

"On August 9, 1961 at the pre-construction meeting, Plaintiff first learned that the work site would be bur-

dened with the excavation and relocation of the A. T. & T. coaxial conduit; that it would be obliged to do the excavation of the cable; and that thereafter there would be a fourteen (14) week delay in access to the work site until A. T. & T. completed their work.

"Contractor further learned that negotiations concerning the cable had been the subject of correspondence between Defendant (Department of Highways) and A. T. & T. since at least June 10, 1959.[2] This information concerning the correspondence and negotiations between the Department of Highways and A. T. &T. was never communicated to the Plaintiff or noted in any portion of the bid documents or contract prior to Plaintiff's bid on the project.

"Since Plaintiff was unable to proceed in accordance with their Schedule of Operation, (which, incidentally,

---

"2. We add here that by letter dated February 8, 1961, AT&T informed the Department as follows:

'The telephone plant is affected at two locations as follows:

'(1) L. R. 150 (Bristol Pike) between Stations 146 and 162 at the Street Road Intersection. Your contractor should complete the excavation between stations 146 and 154 before the construction of the proposed conduit reroute in the sidewalk area of Relocated #150 is started. It is then *estimated that 10 weeks will be required to complete the work before the existing location can* be abandoned.

'(2) L. R. 150 (Bristol Pike) between Stations 53 and 67 at the Woodhaven Road Interchange. It is requested that the highway contractor excavate proposed L. R. 1029, Woodhaven Road south from the south R/W line of L. R. 150 to cut line without disturbing the present conduit location prior to construction of the new telephone conduit. *Then, approximately 14 weeks will be required to reroute the cable before Bristol Road can be excavated.*' (Emphasis in original.)

"The contract was advertised for bids on June 29, 1961; Groves was awarded the contract on August 2, 1961; Groves first learned that AT&T would occupy the site in accordance with its schedule given the Department in February 1961, at a pre-construction conference on August 9, 1961; and the Department gave Groves notice to proceed with the work on August 24, 1961."

was in substantial agreement with that submitted by the Department), because of the A. T. & T. presence, the project sequence was compressed and thrown 'out of gear'. To complete the project in the allotted time, Plaintiff instituted double working shifts, 20 hours per day, 6 days a week and 16 hours on Saturday. The sequence of work was further complicated because the availability of the batch plant was planned for the year 1962, and by an expected strike of operating engineers. Further, Plaintiff was unable to make a continuous run on its filling, grading and paving operations."

In holding the Department liable in damages, despite the usual exculpating clause in the contract and specifications,[3] the Board relied on *Gasparini Excavating Co. v. Pa. Turnpike Commission,* 409 Pa. 465, 187 A. 2d 157 (1963). We agree that the holding of that case is apposite and indeed controlling in the disposition of this case in favor of Groves. In *Gasparini, supra,* as here, the claim was for damages occasioned by interference with access to the work site. The contract in the cited case included a clause that no claims for damages or extra costs due to delay caused by the work of persons doing slushing at the site would be allowed. The contractor was in fact unable to proceed with its work, except in a

---

3. Including the following:

"The Department has shown on the drawings such structures as have been brought to its attention, but such indication on the drawings shall not be assumed to relieve the contractor of any responsibility with respect thereto; neither shall the Department be held responsible for any omission or failure to give notice to the contractor of any other structures on, under, or over the project. . . ."
and

"The Department of Highways does not guarantee the accuracy of the locations of the existing underground utility structures shown on the contract drawings. Neither does the Department guarantee that all the underground structures are shown."

limited way, for almost five months because of slushing operations at the work location. The lower court affirmed the arbitrators' decision unfavorable to the contractor's claim, concluding that the exculpatory language of the contract barred the claim. The Supreme Court reversed, writing:

"In the instant case there was interference by the Appellee after ordering Appellant to begin performance of work and then denying access to the work area accupied by another contractor, Manu-Mine. In the words of Justice Kephart in Henry Shenk Co., supra, 319 Pa. at p.104, 'But such provisions have no reference to an affirmative or positive interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work unless delay in performance is contemplated by the contract; . . .'

"Here there was failure in the essential matter of the Commission not having a predetermined program and interference with Appellant's performance by its exclusion from the work site from June 30, 1955 until November 30, 1955 after Gasparini received its notice of June 6 to start its operation.

"As far back as 1905 this Court in Sheehan v. Pittsburg, 213 Pa. 133, said: 'Notwithstanding the breadth of the language of the agreement that all loss or damages from unforeseen obstructions and difficulties and from delay, were to be borne by the contractors, it is clear that the delay from the city's failure to obtain complete right-of-way was not in the class of difficulties and delays which were in the minds of the parties, for the agreement itself was based on the assumption by both parties that the complete right-of-way had been secured so that the work could be begun at any point and proceed without interruption.

" 'For the same reason the provision for extension of time only on written assent by the director of public works is not applicable.

" 'There was therefore no breach of the agreement by the Plaintiffs which prevented them from recovering, and the authorities are clear that they were not bound to abandon the work or to be taken as having waived the delay caused by the city. While they might have abandoned it they had the option to continue and claim the damages caused by the city's fault.' " 409 Pa. at 476-477, 187 A.2d at 162-163.

Here, before letting the contract for bids the Department had made arrangements with AT&T for the latter to occupy portions of the site for the purposes of relocating its coaxial cables during 14 weeks. The Department failed to notify bidders of this important condition known only to it and AT&T. The Department then compounded the problem by an express provision of the contract denying the contractor access to excavation located to the north of the Woodhaven interchange required to be used for the embankments of that interchange. It nevertheless ordered Groves to proceed with the work.

Further support for the award made in this case is found in *Pa. Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944). There the Turnpike Commission took bids on plans showing subsurface condition to consist of loose earth and limestone, although having in its possession information, which it did not disclose, that the area to be excavated was actually underlain primarily with rock. The Supreme Court held that the bidding procedure worked a constructive fraud upon the contractor and that an award of additional cost was proper. While it is true that the drawings here showed two AT&T manholes at the location, and that Groves might have by investigation discovered that underground facilities were the principal conduits for the telephone lines between New York and Philadelphia, there was no disclosure whatsoever that

work at the Woodhaven interchange would be delayed for an estimated 14 weeks during which, by prior arrangement with the Department, AT&T would be relocating its cables. The delay and disruption to the orderly performance of the contract was not, in any event, cause by the presence of the cables, but by requirement of the Department, based on its prior agreement with AT&T, that the utility have exclusive possession of the work site during its removal and relocation of the cables, presumably because of their importance to communications between the cities mentioned. We hold that the Board was correct in holding the Department liable for the increased cost of performing the contract occasioned by this known requirement not disclosed to the contractor.

The Department finally contends that the contractor was not entitled to interest on its claim, awarded by the Board from July 15, 1967, the date of the filing of the Statement of Claim. In *Commonwealth v. Berger*, 11 Pa. Commonwealth Ct. 332, 312 A.2d 100 (1973), and *General State Authority v. Loffredo*, 16 Pa. Commonwealth Ct. 237, 328 A.2d 886 (1974), we held that the Commonwealth is required to pay interest on awards made by the Board of Arbitration of Claims. We fully expounded on this subject in *Commonwealth v. Berger, supra,* to which we here make reference as a source of the authorities.

The only questions raised by Groves in its cross-appeal are as to the adequacy of the award. The total contract price was about $4,000,000. As noted, the Board awarded Groves an additional (if the Final Computation Certificate showed unit work conforming to estimates) $819,999.88. It is apparent that this figure was arrived at by multiplying, in each instance, the difference between the contract unit prices and actual unit costs of the following items of work which were delayed by the required presence of AT&T on the site: class I excavation, borrow, special subgrade, reinforced concrete pav-

ing and paved shoulders. This computation produced an excess of costs over contract prices of $745,999.88, to which the Board of Arbitration of Claims added $74,000, or about 10%, in arriving at its award. The Board did not specify whether the added $74,000 was on account of loss of profits or for additional general overhead.

Groves adduced evidence of the unit costs estimated by it in preparation for bidding which were, of course, lower than the contract unit prices. It contends that the Board should have awarded it the difference between its prebidding estimated unit costs and the actual unit costs, rather than the difference between contract and actual unit prices. This contention is without merit. The claim is founded on the Department's breach of the contract by hindering its performance. Groves was entitled to be placed in the same position it would have occupied had there been no breach; that is, that of receiving the contract price. The award of the difference between the contract price and the actual cost of the items accomplishes this in view of absence in this record of persuasive evidence that the actual costs would, except for the breach, have been the same as its estimates.

Groves' second argument is that the award makes no provision for loss of profits. This is equally without merit. The entire contract was to be performed in 280 working days and, by incurring the costs for extra time and labor herein recovered, Groves completed the work on time. Whatever profits were anticipated on the total contract were presumably duly received, there being no evidence to the contrary. We know of no rule of law which provides that a contractor is entitled to receive a profit on each and every item of work on a contract of this nature.

Groves finally complains that the Board erred in not awarding sufficient moneys for general overhead. The only evidence adduced in this regard is that its estimate of total overhead for the entire project was some $405,000 greater than it estimated when preparing to bid. No

attempt was made to specify what amount of this total increase was attributable to its complaints in this case.

The Board awarded Groves the full amount of damages properly proved and claimed, plus 10% for profit or overhead or both. We are satisfied that the award was eminently fair to Groves and the Commonwealth has not complained except as to the item of interest. We accordingly enter the following:

## ORDER

AND NOW, this 29th day of July, 1975, the appeals of both the Commonwealth, Department of Transportation and of S. J. Groves and Sons Company are dismissed and the award of the Board of Arbitration of Claims is affirmed.

