## JOHN SPEARLY CONSTRUCTION, INC.

v.

## PENNS VALLEY AREA SCHOOL DISTRICT, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 15, 2015.

Decided July 24, 2015.

594

Joseph P. Green, Bellefonte, for appellee.

BEFORE: ROBERT SIMPSON, Judge, and P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge ROBERT SIMPSON.

In this construction contract appeal, the Penns Valley Area School District (District) asks whether the Centre County Court of Common Pleas (trial court)[1] erred in granting the contract claim of John Spearly Construction, Inc. (Contractor), and denying its claim for liquidated damages. The District withheld partial payment from Contractor based on a delay in substantial completion of the work and a dispute as to responsibility for certain tasks. Contractor filed suit to recover the balance due under the contract and damages for delay.

After a non-jury trial, the trial court entered a verdict in Contractor's favor.[2] The trial court found the District actively interfered with Contractor's completion, and awarded Contractor delay damages, penalties and counsel fees, in addition to the contract payment wrongfully withheld. The District appeals, arguing the trial court disregarded the "no damages for

---

1. The Honorable Jonathan D. Grine presided.

2. The trial court also resolved a subcontractor's breach of contract claim against Contractor.

delay" clause, committed other errors in contract interpretation, and abused its discretion in weighing the evidence. Upon review, we affirm.

## I. Background

Contractor and the District entered into a contract for construction of a biomass boiler system (Project). The contract documents consisted of the Standard AIA Form Contract and the General Conditions (Contract). The Contract designated the architect, EI Associates (Architect) as the District's representative through which changes and payments flowed. Reproduced Record (R.R.) at 211a. Contractor was the general contractor[3] responsible for construction of the biomass boiler system, essentially the building to house the boiler plant.

The total value of the Contract was approximately $933,000.00, including additional change order amounts agreed to throughout the Project. In addition to the Contract, other documents associated with the Project included a "project manual," containing general conditions, specifications and plans.

The District entered into other direct contracts with other prime contractors for other components of the Project, such as electrical and heating/ventilating/air conditioning (HVAC). The District had a direct contract with Allied Mechanical & Electrical Inc., its HVAC contractor (Allied), which was responsible for delivering the boiler.

In addition to Architect, the District's Project team included Robert Pacella, the "resident representative" of the District (Resident Representative), (collectively, the Project Team). R.R. at 273a. During the course of the Project, Architect presided over the job conferences held bi-weekly between July 21, 2010, and June 30, 2011, regarding the progress of each prime contractor. Architect maintained minutes of all conferences, which both Architect and Resident Representative attended. According to the initial pre-construction job conference report, "[Architect] will provide general administration for the construction contracts and will provide his best efforts to ensure faithful performance of all parties to the Contracts. This will include rendering decisions to resolve any claims or disputes." R.R. at 277a.

Pursuant to the Contract, construction was to be substantially completed no later than October 18, 2010. Construction began in July 2010. Thus, the parties originally contemplated completion of the Project within three months.

From its inception, the Project was plagued with delays. At the outset, an issue arose relating to the height of the building proposed to house the boiler system. Resident Representative requested a reduction from 28 feet to 22 feet for the window eaves. Contractor provided the price for the requested dimension change and requested confirmation as to how to proceed. Contractor advised he needed the information to complete the shop drawings so the project could move forward. Despite the urgency, the District did not respond for almost a month, corresponding to one-third of the anticipated timeframe for substantial completion. In the end, the District decided to use the original height.

Then, an issue regarding placement of steel columns arose, requiring additional changes to the plan. The District request-

---

**3.** Although the trial court identified Contractor as "project coordinator," Tr. Ct., Slip Op., 10/8/14, at 3, counsel for the District clarified that Architect served as the project manager. She explained there was no general contractor coordinating the work of all other contractors.

ed changes that required a redesign to accommodate large vertical windows. Importantly, each change altered the weight-bearing capacity of the building, requiring engineer review and resulting in additional delays.

Several events transpired between October 2010 and December 2010 causing further delay. Specifically, Allied advised that another foot of floor differential was required for the "shaker table" to operate properly.[4] R.R. at 164a, 358a. Delayed decision-making relating to increasing the elevation affected other issues, including construction of tie-ins, and auger pit location, accounting for delays of two additional months. Disputes between the District and Allied also delayed all prime contractors' progress.

The prime contractors sought time extensions under the Contract. Architect granted the first extension in January 2011, to May 3, 2011. As a result of repeated delays, Architect extended the completion date a second time, upon request, to June 2, 2011.

In addition to the inefficiencies of coordination and delayed decision-making on the Project, in Spring 2011, the District hired another contractor to repair and replace storm water and sewer pipes and to add more drainage catch basins (Sewer Contractor). Relevantly, this work was not anticipated by the parties when they entered the Contract. Also, the Sewer Contractor did not complete its work until August 2011. This in turn delayed Contractor from installing the curbing and stone paving until two months after the extended completion date.

Also, when attempting to pour the curb, Contractor encountered problems with the sewer lines and grading, as the grading over the sewer lines was not high enough. The District asked Contractor to raise the grading over the sewer lines. This led to a dispute between Contractor and the District as to who was responsible for regrading and reseeding the area over the sewer lines.

Ultimately, the project was not substantially completed until August 11, 2011. This constituted a delay of 279 days from the original completion date, and 79 days after the extended completion date. Tr. Ct., Slip Op., 10/8/14, at 5.

After substantial completion, in September 2011, Contractor submitted "Payment Application No. 11" in the amount of $98,755.16 to the District. That amount included $52,537.26 representing currently due payments, and $46,217.87 in previously invoiced and unpaid payments. Despite requirements for prompt payment, the District made a partial payment over six months later, in April 2012. In the cover letter, the District stated it deducted $35,000.00 in "estimated liquidated damages" and $10,200.00 for "building site grading/seeding." R.R. at 502a. The District did not explain its calculation of liquidated damages. Contractor then filed suit to recover the balance due, $45,200.00, plus delay damages, interest and counsel fees.

The trial court conducted a one-day non-jury trial where both parties presented testimony and documentary evidence. Contractor presented testimony of owner, David Spearly and its Project foreman, James McCloskey. Contractor also presented testimony of its subcontractor Nev-

---

4. There is testimony that the District was aware of the need for this floor differential prior to starting the Project, but did not advise Contractor and did not correct the drawings before it went to bid. *See* R.R. at 187a

(Allied representative testified, "I said, you never changed the drawings before it went to bid ... I said, I want it in the minutes there that you guys knew this ahead of time and he wouldn't put it in. So—.").

in Stitzer, and Frank Halderman, a representative of Allied, regarding the cause of the delays. Of note, the District did not submit testimony of Architect or Resident Representative despite knowing their whereabouts. R.R. at 197a. The District presented testimony of its Superintendent and of its Business Manager regarding its delay damages. Superintendent testified that in a letter dated April 26, 2011, Architect requested an additional $5,000 per month starting in January 2011, for a total of $35,000. This correlated to the amount the District claimed for liquidated damages.

Based on the evidence, and after considering the parties' proposed findings of fact and conclusions of law, the trial court rendered a verdict in favor of Contractor, and against the District.

Citing its poor communication and lack of responsiveness, the trial court found the District committed active interference. The trial court found the delay in completion was attributable to actions of the District and those of its Project Team. Ultimately, the trial court concluded Contractor was entitled to delay damages by showing "the delay was caused solely by [the District's] actions and inaction." Tr. Ct., Slip. Op. at 9–10. Specifically, the trial court found

> the lengths of time it took the [District] to decide on those changes and to make other decisions related to the building (in some cases, several months) caused the majority of the delays in this case. Additionally, the [District's] decision to bring in [Sewer Contractor] to work on the site further hampered [Contractor's] ability to finish the [P]roject within the contract terms.

*Id.* at 6.

To the extent the District claimed $10,200.00 in damages for regrading and

reseeding of the area because of Sewer Contractor's work, that cost was not attributable to Contractor. The trial court found the hiring of Sewer Contractor was not contemplated by the parties at the time of contracting. The trial court also found the parties modified Contractor's original grading responsibilities so that Contractor would raise the grade and the District would provide topsoil and reseed the area once grading was completed. Then the District reneged on providing the topsoil. The trial court found the District's failure to honor its modification precluded it from claiming damages related to Contractor's nonperformance of the original grading and seeding responsibilities.

The trial court found Contractor proved the $82,057.00 sought as damages for delay. The trial court noted the District only contested the legal entitlement to delay damages, not the factual proof necessary for calculation. The trial court also imposed a 1% penalty per month for the District's wrongful withholding of payment pursuant to Section 12(a) of the Contractor and Subcontractor Payment Act (CSPA),[5] 73 P.S. § 512(a). In addition, the trial court awarded $3,515.00 in counsel fees to Contractor as the substantially prevailing party under Section 12(b) of the CSPA, 73 P.S. § 512(b).

The trial court found the District did not support its claim for delay damages, or its apportionment of half of the overall delay damages to Contractor. The trial court reasoned the District was not entitled to delay damages because the District's lack of prompt decision-making and a contractual dispute with Allied, and actions of Sewer Contractor, hired by the District, caused the delays. The trial court also denied the District's claim for counsel fees pursuant to the Contract.

---

**5.** Act of February 17, 1994, P.L. 73, *as* *amended,* 73 P.S. §§ 501–516.

The District filed post-trial motions, which the trial court denied without briefing or further argument. The trial court then entered judgment in Contractor's favor.

The District appealed to this Court. Notably, the District challenges Contractor's legal entitlement to damages for delay (as opposed to the factual basis for computation), and the trial court's award of penalties only as to the $10,200.00 it incurred for hiring a third party to perform final grading and reseeding.

## II. Discussion

■■■ Our appellate role in cases arising from non-jury trial verdicts is to determine whether competent evidence supports the trial court's findings or whether the court committed an error of law. *James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474 (Pa.Cmwlth.2007). The trial court's findings must be given the same weight and effect on appeal as the verdict of a jury. *Id.* Further, we consider the evidence in a light most favorable to the verdict winner. *Id.* An appellate court will not disturb a trial court's finding absent an abuse of discretion or an error of law. *M & D Properties, Inc. v. Borough of Port Vue*, 893 A.2d 858 (Pa.Cmwlth.2006).

The District assigns error to the trial court in several respects. First, the District argues the trial court erred in attributing delays solely to the District. Second, the District contends the trial court erred in failing to apply the contractual definition of "active interference" and failing to enforce the prior notice required by the Contract. Third, the District asserts the trial court erred in disregarding the time extensions were granted on a "no cost" basis. In the event this Court disagrees with the trial court as to the District's liability for delay damages, the District also claims entitlement to attorney

fees. Lastly, the District maintains it properly withheld partial payment for incomplete work under the terms of the Contract.

### A. Delays Attributable to District

The District argues the trial court erred in finding the District solely caused the delays. The trial court thus disregarded undisputed evidence showing multiple parties bore responsibility. In attributing the delays to the District, the trial court erred in two material respects: (1) holding the District liable for delays of another contractor; and, (2) considering change order delays active interference, contrary to the unambiguous contract terms.

■■■ "In construing the terms of a contract, a reviewing court must strive to ascertain and give effect to the intent of the parties as found in the written contract." *Dep't of Gen. Servs. v. Pittsburgh Bldg. Co.*, 920 A.2d 973, 983 (Pa.Cmwlth. 2007). This Court presumes the parties carefully select contract language and are aware of the meaning of the terms selected. *Id.* "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Id.* (quoting *E. Crossroads Ctr., Inc. v. Mellon–Stuart Co.*, 416 Pa. 229, 205 A.2d 865, 866 (1965)).

■■■ "Generally, 'no damages for delay' clauses are enforceable." *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 706, 918 A.2d 748 (2007). Nonetheless, Pennsylvania law recognizes exculpatory provisions in a contract cannot be raised as a defense when a public entity commits active interference. *Id.* In determining whether to honor an exculpatory clause, or to negate it based on a school district's conduct, this Court follows our Supreme Court's decision in *Henry Shenk*

*Co. v. Erie County,* 319 Pa. 100, 178 A. 662 (1935). *See Cooper.*

In *Shenk,* our Supreme Court explained:

In construction work, an owner does not generally guarantee or indemnify against loss occasioned by the delays of independent contractors connected with the work which may be reasonably anticipated. The owner fulfills his duty when he selects as contractor a person generally known as responsible. *Where contracts contain a provision against delay of other contractors* or other incidents of the work, which provide in substance ... *for no liability on the part of the owner for delays of contractors or changes in work,* such provision includes delays of other contractors in connection with the work, or delays which are covered by the contract or reasonably anticipated from the circumstances attending the project. But *such provisions have no reference to an affirmative or positive interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work* unless delay in performance is contemplated by the contract....

*Shenk,* 178 A. at 664 (citations omitted) (emphasis added).

 Thus, a "no damages for delay" clause will not be enforced if a school district, or its agent, either took positive action not reasonably anticipated under the contract, or failed to act as needed for a project to progress. This case implicates both the positive action and the failure to act aspects of this claim.

 To establish delay damages, a contractor must establish the extent of the delay, responsibility for delay, and the damages related to the delay. *A.G. Cullen*

*Constr., Inc. v. State Sys. Higher Educ.,* 898 A.2d 1145 (Pa.Cmwlth.2006).

The District contends that because other contractors are responsible for some of the delays, the District is not solely responsible. The District disclaims any responsibility for delays caused by other contractors, including Allied's delayed delivery of the boiler and Sewer Contractor's disturbance at the work site. The District also asserts the trial court's finding is contrary to undisputed evidence.

### 1. Delays by Third Parties

 The District argues *Shenk* protects an owner from liability for delays of third parties. However, *Shenk* does not insulate an owner from liability for acts of a third party or restrict active interference to only positive acts. An owner may be held responsible for acts of other third parties. *See S.J. Groves & Sons Co. v. Dep't of Transp.,* 20 Pa.Cmwlth. 526, 343 A.2d 72 (1975) (lack of access to work site caused by work of third party, AT & T, may be attributed to government). Moreover, an owner may be liable for action or inaction of third-party contractors when the owner is ultimately responsible for the scheduling and oversight of those contractors. *Vern's Elec., Inc. v. Mt. Lebanon Sch. Dist.* (Pa.Cmwlth., No. 1197 C.D. 2007, filed Sept. 12, 2008), (unreported) 2008 WL 9398643 (remanding to factfinder to assess scheduling responsibility). Liability will depend on who bears responsibility for the acts of the third party. *Id.*

 Here, the District bore responsibility for the inaction of its decision-makers, and for its agents who comprise the Project Team. R.R. at 211a, 273a. Accordingly, the trial court did not err in attributing the delays solely to the District when it is responsible for Architect, its designee charged with communicating with and

coordinating schedules of all prime contractors, including Allied.

In its narrow reading of *Shenk,* the District ignores precedent that active interference may be based on an owner's failure to act in an essential matter. *Coatesville Contractors & Eng'rs, Inc. v. Borough of Ridley Park,* 509 Pa. 553, 506 A.2d 862 (1986). A delay in making a decision, which is necessary for progress on the Project, is a failure to act in an essential matter. That is the primary reason the trial court cited for finding the District solely liable, "indecision ... and lack of timely communication" of the Project Team. Tr. Ct., Slip Op. at 5–6.

Here, the trial court implicitly found the Project Team was responsible for ensuring timely decision-making and enforcing the schedule. *Id.* As the District's representative, Architect's lack of oversight is attributable to the District. R.R. at 211a. The District was aware Allied was not complying with the schedule through the job conference reports and progress reports submitted by the prime contractors. R.R. at 284a, 292a, 310a (indicating separate meeting with Allied), 336a, 339a (Architect's prepared statement regarding issues with Allied); 351a (same). Competent evidence supports the trial court's finding that the District was responsible for delayed decision-making that "caused the majority of the delays in this case." Tr. Ct., Slip Op. at 6; *see, e.g.,* R.R. at 323a (one month delay for roof District decision), R.R. at 395a (non-delivery of plans by Resident Representative).

 As to the remaining delays, the trial court found the District's decision to hire the Sewer Contractor to work on-site further delayed Contractor's completion. *Id.* Competent evidence supports the trial court's finding that the District's hiring of Sewer Contractor was not reasonably anticipated by the parties, nor did the parties anticipate the impact of the sewer work on the work site. R.R. at 166a–67a. Thus, the trial court did not err in finding the District's hiring of Sewer Contractor constituted positive interference. The record reflects Sewer Contractor's work disturbed the work site, limiting Contractor's access to it and delaying completion of the work. Limiting access to a work site is frequently deemed active interference. *See, e.g., Coatesville* (work site was unavailable when lake was not drained as contemplated by parties, impeding contractor's excavation); *Gasparini Excavating Co. v. Pa. Turnpike Comm'n,* 409 Pa. 465, 187 A.2d 157 (1963) (owner interfered when work site was unavailable due to occupation by others performing other work on-site).

This Court also rejects the District's argument that the trial court's attribution of the delay solely to the District is contrary to the evidence. First, the so-called "undisputed" evidence that others were responsible for delays consists of the job conference reports, which Contractor disputed at trial. *See* R.R. at 190a. Second, consideration of the "undisputed" evidence requires a reweighing of the evidence, which is beyond this Court's purview. As fact-finder, the trial court is permitted to credit or disregard the evidence before it. On appeal, this Court may only assess whether competent evidence supports the trial court's findings. Further, this Court is required to view the trial court's findings in a light most favorable to Contractor as verdict-winner. *James Corp.*

Mindful of our deferential standard of review, we conclude the trial court did not err in finding the District failed to act in an essential matter based on its delayed decision-making and lack of coordinating the schedule. Further, the trial court did not err in finding the hiring of Sewer Contractor toward the end of the Project

increased Contractor's workload in an unanticipated manner, and disturbed the work site, thus causing Contractor to suffer additional delays.

## 2. Change Orders Excluded from "Active Interference"

The District next argues the trial court was required to construe "active interference" based on its contractual definition. In particular, the District argues that "order changes in work" were not to be construed as "active interference." Appellant's Br. at 25. We disagree.

The Contract stated that an extension of the contract time shall be the sole remedy against the District or Architect for delays, "unless a delay is caused by the acts of [the District] constituting active interference, as defined under applicable law *and subject to the limitations stated herein...*." R.R. at 246a–47a (emphasis added). The Contract subsequently defined "active interference" to exclude certain conduct as follows:

> [The District's] exercise or failure to exercise any rights or remedies under the Contract Documents (including without limitation, order changes in the work, or directing suspension, rescheduling or correction of the work), regardless of the extent or frequency thereof, shall not be constructed as active interference with [Contractor's] performance of the work.

*Id.* The District thus argues that change orders were excluded, as was any rescheduling *"regardless of the extent or frequency thereof." Id.* (emphasis added).

Pennsylvania appellate courts hold that "no damages for delay" clauses, including those which attempt to limit a contractor's remedy to additional time to perform the work, are exculpatory provisions. *Coatesville; Shenk; James Corp.; Cooper.* Exculpatory and indemnity claus-

es are disfavored under Pennsylvania law. *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195 (3d Cir.1995). Nevertheless, such clauses may be valid and enforceable if stringent standards are met. *Keystone Aeronautics Corp. v. R.J. Enstrom Corp.,* 499 F.2d 146 (3d Cir.1974).

The burden to establish immunity under an exculpatory clause is on the party asserting it. *Fid. Leasing Corp. v. Dun & Bradstreet, Inc.,* 494 F.Supp. 786 (E.D.Pa.1980); *Emp'rs Liab. Assur. Corp. v. Greenville Business Men's Ass'n,* 423 Pa. 288, 224 A.2d 620 (1966). In general, an exculpatory clause is valid if: (1) it does not contravene public policy; (2) the contract relates solely to the private affairs of the contracting parties and not include a matter of public interest; (3) each party must be a free bargaining agent; and, (4) it is clear that the beneficiary of the clause is being relieved of liability only for his or her own acts of negligence. *Valhal Corp.* Even where an exculpatory clause meets the general standards for validity, the clause will be strictly construed against the party seeking immunity. *Id.; see also Garbish v. Malvern Fed. Sav. & Loan Ass'n,* 358 Pa.Super. 282, 517 A.2d 547 (1986).

Courts "[distinguish] between exculpatory clauses that relate entirely to private affairs between the parties and those that contradict public policy as articulated by the legislature." *Soxman v. Goodge,* 372 Pa.Super. 343, 539 A.2d 826, 828 (1988). Proper construction of public school buildings is a matter of interest to the public or state. *State Pub. Sch. Bldg. Auth. v. Goodea Constr. Co.,* 24 Pa. D. & C.3d 648 (C.P. Erie, filed March 24, 1981).

Further, and of significance here, the General Assembly declared that a contract or agreement providing that an architect or an engineer (or their agents, servants

or employees) is to be indemnified or held harmless for claims arising out of the preparation or approval of maps, drawings, change orders, designs or specifications is void as against public policy. Act of July 9, 1970, P.L. 484, 68 P.S. § 491. Similarly, attempts to indemnify or hold harmless an architect or engineer for the giving of or failure to give directions or instructions, provided it is the primary cause of a loss, are also against public policy and wholly unenforceable. *Id.*

■ Considering the foregoing, we discern no error in the trial court's apparent conclusion that the District did not sustain its burden to prove that its exculpatory "no damages for delay" clause was enforceable as written, for several reasons. First, the District did not, and cannot, prove that the clause relates solely to the private affairs of the contracting parties, because it relates to construction of a public school building.

Second, the District did not attempt to explain how the clause is consistent with public policy pertaining to an architect's approval of change orders or failure to give directions or instructions. As discussed above, exculpatory clauses and indemnification clauses are disfavored under Pennsylvania law. The "no damages for delay" clause specifically applied to actions of the District *and* Architect; moreover, the trial court found that the majority of the delays were caused by the District (through the Project Team which included Architect) taking so much time to decide on changes and make other decisions. Given the statutory declaration of public policy *against* immunizing an architect for approval of change orders or failure to give directions and instructions, more guidance from the District was needed to carry its burden.

Third, the clarity of the clause is subject to question. This is especially true to the extent that the clause attempts to incorporate existing case law pertaining to "active interference" in one place, and then redefines "active interference" in another place. In light of this confusing approach, the rule of strict construction against the party asserting immunity is particularly relevant.

## B. Notice Requirements for Active Interference Claim

■ In addition, the District argues the trial court erred in not applying the notice provisions in the "no damages for delay" clause. It asserts the Contract required Contractor to provide written notice of the active interference prior to making any claim for delay damages. The District contends that absent compliance with the notice provisions, Contractor did not meet the prerequisites for making such a claim.

The District refers to the prior written notice in the Contract as a "mandatory procedure" Contractor must follow to claim delay damages. *See* Appellant's Br. at 20. Specifically, the Contract required Contractor to provide prior written notice to the District of any acts constituting active interference, allowing such claims "only to the extent that such acts continue after" Contractor provided said notice. R.R. at 246a (Section 8.3.3 of the General Conditions). There is no dispute that Contractor did not provide formal written notice to the District of any acts of active interference during the course of the Project.

However, the District concedes it had knowledge of the delay that was occurring. Appellant's Br. at 23. The District does not argue it was denied an opportunity to "cure" the cause of any delay; rather, the District argues it did not know a claim for delay would be made until two years after Contractor worked on the Project. *Id.* at

23–24. Otherwise, the District does not explain how the timing of the written notice of claim caused prejudice.[6] *Id.*

The absence of formal notice is not fatal to Contractor's delay damages claim for several reasons. First, as discussed above, the District failed to carry its burden of proving that the exculpatory "no damages for delay" clause was enforceable as written. Second, case law does not support a forfeiture based on a written notice provision of a public contract where there was actual notice and no prejudice. *James Corp.*

*James Corp.* involved contractor litigation against a school district for acceleration damages resulting from a contractor's efforts to expedite work to meet the school district's schedule. There, the school district argued the contractor's damages claim was precluded because the contractor did not provide formal notice as required by the contract. The contract required the contractor to make a written claim for damages to the school district within 21 days of the event that gave rise to the claim.

Relevant here, this Court recognized the school district had actual notice of the delay and, despite knowledge of the operative facts, the school district did not take measures to correct it. To reach our conclusion, we relied on *Hoel–Steffen Construction Co. v. United States*, 456 F.2d 760 (Ct.Cl.1972).

In *Hoel–Steffen,* the contractor sued for delay damages without providing notification in accordance with the contract. The federal claims court distinguished between notice of the government's failure to act and notice of the damages. *Id.* The for-

mer notice apprised the government of the offending conduct. Of this, the federal claims court found the government had constructive notice because the contractor orally complained of interferences in its work. The federal claims court reasoned strict compliance with the provision to notify the government "of the act or failure to act involved" was unnecessary because the government was aware of the operative fact of delay. *Id.* at 766.

This Court followed the federal claims court's rationale that narrow application of the notice provisions was not appropriate where the government was aware of the operative facts. *James Corp.* Based on the similar circumstances, we apply this rationale to the instant case.

Here, the District had notice of the delays throughout the process through the bi-weekly job conferences. Architect authored the minutes, which reflect delays in approvals of drawings. The minutes also note different meetings to coordinate provision of the boiler. R.R. at 297a. Contractor provided oral notice and requested additional extensions based on the delays in work caused by the District's indecision and lengthy decision-making, and late delivery of the boiler. *See* R.R. at 342a (Dave Spearly noted delay for untimely returning of drawings and delay for structural review; noting all prime contractors will request time extension). Such informal notice suffices. Like the school district in *James Corp.*, the District here had knowledge of the operative facts that caused the delays throughout the Project and failed to act.

---

**6.** The District asserts the first written notice it received of a delay damages claim was in Contractor's complaint in the current litigation. It is useful to observe that the complaint was filed *after* the District failed to make prompt payment on the final invoice and withheld $35,000.00 for "estimated liquidated damages," and $10,200.00 for "building site grading/seeding." R.R. 502a.

We are also unpersuaded by the District's assertions that it should not be liable for damages attributable to Contractor's winter work because Contractor was aware of the delay before the onset of winter. Significantly, in *James Corp.*, we agreed with the trial court that damages could only be quantified after completion of the project. It is only once the project is completed that a contractor is able to quantify damages and assess the value of making a claim. *Id.* That rationale applies equally to this case. The District here had actual notice of the delays and the requests of Contractor and other prime contractors for extensions of time. Indeed, the District did not deny knowledge of these operative facts when queried at oral argument. To the extent the District decried lack of notice of the amount of damages, notice as to the amount or calculation of damages is not necessary until the end of the project. *James Corp.*

Further, also as in *James Corp.*, the District did not establish any prejudice from the lack of formal notice. When asked to identify the prejudice at oral argument, the District also did not identify any prejudice from the written notice delay apart from the amount of delay damages.

In short, Contractor's delay damage claim is not precluded by noncompliance with the Contract's notice provisions.

### C. No-cost Extensions

The District also argues the trial court erred as a matter of law in applying the extensions of time. The extensions were only authorized as no-cost extensions, meaning Contractor would not be eligible for additional compensation based on the additional time to perform. The District contends the trial court erred in binding the District to the extensions of time without also binding Contractor to performing its work within the extended timeframe on a no-cost basis.

■ We are unpersuaded by the District's arguments for both legal and factual reasons. Legally, the District merely reframes its primary argument that Contractor is not entitled to delay damages under the Contract as written. R.R. at 246a–47a. As discussed above, however, Contractor's remedy was not confined to "no-cost" extensions under the exculpatory "no damages for delay" clause. This is because the trial court found the District's delayed decision-making and hiring of Sewer Contractor constituted active interference, and because the District did not carry its burden to prove the "no damages for delay" clause was enforceable as written.

■ Factually, the District does not cite any record evidence supporting its position that the extensions were made on a purely no-cost basis. The record reflects Architect granted the extensions (for less time than requested) as a matter of necessity. *See* R.R. at 490a. Although Architect stated the extensions were "no-cost," that is a unilateral statement without the consent of Contractor. *Id.* Generally, there must be mutual assent for terms to bind both parties. *See generally Pa. Human Rel. Comm'n v. Ammon K. Graybill, Jr., Inc., Real Estate*, 482 Pa. 143, 393 A.2d 420, 423 (1978) (affirming this Court's holding that agreement did not become enforceable because "[u]nilateral action cannot substitute for mutual assent of all concerned parties" to create a binding agreement). Therefore, it was not error for the trial court to disregard the "no-cost" aspect of the extensions that conflicts with its findings on active interference.

### D. District's Claim for Attorney Fees

The District asserts it is entitled to attorney fees because the trial court erred in holding the District solely liable for the

delays. Pursuant to Section 8.3.5 of the General Conditions, the District is entitled to attorney fees if Contractor does not prevail on its entire claim. Contractor responds the District's claim for fees is invalid because the contractual provision providing for such fees is unconscionable and against public policy.

■ "The general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." *Lucchino v. Commonwealth*, 570 Pa. 277, 809 A.2d 264, 267 (2002). However, this so-called "American Rule" does not apply when "there is ... express statutory authorization, a clear agreement of the parties or some other established exception." *Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 572 Pa. 191, 813 A.2d 813, 822 (2002); *see also Boro Constr., Inc. v. Ridley Sch. Dist.*, 992 A.2d 208 (Pa. Cmwlth.2010). The Contract here contained a clear fee-shifting provision triggered in the event Contractor did not prevail on its claim for delay damages.

■ The District's claim for attorney fees is derived from Section 8.3.5 of the General Conditions, which provides:

> In the event [Contractor] *asserts a monetary claim for delay*, as defined hereunder, *and fails to prevail as to its entire claim* in its litigation, [Contractor] shall be liable to [the District] for any attorney's fees, professional fees, costs and expenses associated with analyzing, defending or otherwise opposing any such claim or litigation.

R.R. at 247a (emphasis added). The courts define a "prevailing party" as:

> 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded' [citation omitted]. While this definition encompasses those situations where a party receives less

relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor. *Profit Wize Mktg. v. Wiest*, 812 A.2d 1270, 1275–76 (Pa.Super.2002) (quoting BLACK'S LAW DICTIONARY 1145 (7th ed. 1999)); *see also U. Gwynedd Towamencin Mun. Auth. v. Dep't of Envtl. Prot.*, 9 A.3d 255 (Pa.Cmwlth.2010) (noting prevailing party status is conferred by successful resolution, including by settlement). The trial court entered a verdict for Contractor and held Contractor prevailed on its entire claim as to the District for payments improperly withheld and delay damages. *See* Tr. Ct., Slip Op. at 11. Thus, Contractor was the prevailing party. *Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607 (Pa.Super.2006).

Because we uphold the trial court's verdict, Contractor remains the prevailing party as to its entire claim. As competent evidence supports the trial court's finding that the District caused the delays underlying Contractor's damage claim, the District is not entitled to attorney's fees. It is thus unnecessary to address the parties' arguments regarding unconscionability of the fee provision.

**E. Improper Withholding of Payment**

Lastly, the District argues the trial court erred in concluding the District improperly withheld payment from Contractor when Contractor did not complete performance. The District contends the terms of the Contract expressly permit withholding of payment for incomplete work. Further, the District needed to hire a third party to complete the work at an additional cost of $10,200.00. In addition, the District asserts the alleged agreement to modify Contractor's performance responsibilities was not authorized by its

governing body, the school board; thus, the agreement is void.

Contractor counters the trial court properly determined the District was not authorized to withhold payment as to regrading and reseeding. Deducting $10,200.00 from Contractor's payment was improper because Sewer Contractor's work required raising the grades to cover the sewer lines, which was not contemplated by the parties. Contractor maintains the District recognized the additional grading involved, and so modified Contractor's responsibility by agreeing to supply the topsoil. That the District did not honor the modification and secure the topsoil excused Contractor's performance of final grading. As to the District's claim that its agents lacked authority to agree to any modification, Contractor asserts the District waived this argument by failing to brief it below.

At the outset, it is important to recognize the District claimed a right to withhold only payment for work not performed. However, the District withheld payment in the amount of $45,200.00. This figure does not correlate to the amount due for the work allegedly not performed (final grading and seeding). Rather, the amount correlates to $35,000.00 in unsubstantiated liquidated damages and $10,200.00 for the amount the District paid for a third party to complete this work. Thus, the District does not challenge the trial court's decision that the portion for liquidated damages ($35,-000.00) was wrongfully withheld.

■■■ There is no dispute that, pursuant to the terms of the Contract, Contractor was responsible for finished grading and seeding. There is also no dispute that Contractor did not perform that work, and the District hired a third party to do it. The District withheld $10,200.00 paid to the third party to perform the final grading and seeding work, claiming entitlement to withhold that payment as incomplete work.

The Contract sets forth a process permitting the District to deduct costs for performing incomplete work from Contractor's payments. Section 2.4 of the General Conditions provides in pertinent part:

> If [Contractor] defaults or neglects to carry out the Work in accordance with the Contract documents [or] Project Schedule, or fails to adequately staff the Project with proper supervision, materials and workforce ... [the District] may, without prejudice to other remedies [the District] may have, correct such deficiencies. In such case, an appropriate Change Order of Construction Change Directive shall be issued deducting form [sic] payment then or thereafter due to [Contractor] the reasonable cost of correcting such deficiencies....

R.R. at 227a.

Despite this contract provision, the trial court concluded the District improperly withheld the $10,200.00 corresponding to the grading and seeding work. In so doing, the trial court found the District and Contractor agreed to modify Contractor's responsibility as to regrading in light of Sewer Contractor's work. The trial court reasoned the parties did not contemplate the extent of the disturbance caused by Sewer Contractor's work.

The trial court explained additional topsoil, beyond that contemplated by the parties in the Contract, was required as a result of Sewer Contractor's repositioning of the sewer lines. To cover the sewer lines, the District requested Contractor to raise the grade. At their current depth, the lines were susceptible to freezing. R.R. at 202a. Contractor agreed to add fill to a higher level and regrade. The District agreed to procure the additional topsoil, handle the seeding, and split the

cost between the prime contractors. Although the District agreed to provide the additional topsoil needed, it later refused to do so. Instead, it demanded Contractor return and complete the final grade with topsoil and reseed. The trial court made these findings based on the testimony and exhibits admitted at trial. Tr. Ct., Slip Op. at 7–8; *see* R.R. at 167a, 202a.

From our review of the record, the trial court's findings are supported by competent evidence. *See* R.R. at 167a (testimony as to Resident Representative's request to raise the level of the grade based on the sewer line position). A job conference report dated July 6, 2011, lists topsoil under the District's responsibilities, noting "all parties will share the cost of topsoil." R.R. at 483a. This is consistent with the testimony at trial. R.R. at 167a.

In light of the evidence showing a modification of Contractor's duties for final grading and reseeding, the trial court did not err in excusing Contractor from performance. The provision of topsoil was a precondition to Contractor's performance of the expanded scope of regrading work. As that precondition did not occur, Contractor's performance of that task was excused, and no damages are due to the District for its nonperformance. *Boro Constr.*

██ Significantly, the District does not deny that its Resident Representative agreed to this modification.[7] Rather, the District asserts the side agreement did not bind the District. This presumes the modification of responsibility for the regrading and reseeding constituted a separate agreement necessitating a separate approval by the school board. This Court rejects that presumption.

The modification of responsibility for regrading and reseeding under the existing Contract does not constitute an agreement requiring separate approval. *James Corp.* In *James Corp.*, this Court rejected a school district's argument that Section 508 of the Public School Code of 1929[8] (relating to board approval for increases to indebtedness), barred the contractor's claim for payment of additional work as it was part of the same contract already approved. Similarly, the District here acknowledges regrading is part of the Contract. That is why the District deducted the cost of performing the task from its final payment to Contractor. As in *James Corp.*, it was not necessary for the school board to approve, specifically, the modification regarding regrading and reseeding work. The school board approved the Project, which included provisions for regrading and reseeding, and "that is all that was required by Section 508." *E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist.*, 111 A.3d 220, 229 (Pa. Cmwlth.2015).

██ Moreover, this Court sees merit in Contractor's waiver argument: the District's contention regarding the necessity for school board approval of Contract modification is waived because the District did not raise it during trial or raise it with sufficient clarity in its post-trial motion to fairly put the trial court on notice to address the issue. *See* R.R. at 126a–130a. Thus, it is not surprising that the trial court did not make any findings or devote any discussion to the board-authority contention. Accordingly, the issue is waived. *Hinkson v. Dep't of Transp.*, 871 A.2d 301, 303 (Pa.Cmwlth.2005) (a post-trial motion

7. Prior to completion of the Project, and at around the time the parties agreed to this modification, Resident Representative resigned in June 2011. R.R. at 203a. It is

unclear whether his resignation related to the Project.

8. Act of March 10, 1929, P.S. 30, *as amended*, 24 P.S. § 5–508.

must set forth the theories in support thereof "so that the lower court will know what it is being asked to decide.").

For these reasons, we uphold the trial court's finding that the parties modified Contractor's regrading responsibilities, precluding the District's recovery of costs.

### III. Conclusion

For the foregoing reasons, we affirm the trial court.[9] Because we uphold the trial court's verdict in Contractor's favor on his claim for delay damages, the District is not entitled to attorney's fees under the Contract.

### ORDER

AND NOW, this 24th day of July, 2015, the order dated October 23, 2014, and the judgment entered on October 30, 2014, of the Centre County Court of Common Pleas is hereby **AFFIRMED**.

---

**9.** This Court decided *East Coast Paving & Sealcoating v. North Allegheny School District,* 111 A.3d 220 (Pa.Cmwlth.2015), after the parties briefed the improper withholding of payment under the CSPA. There, we held as a matter of first impression that a contractor may only recover penalties, interest and counsel fees pursuant to the Prompt Pay Act in the Procurement Code, 62 Pa.C.S. §§ 3931–3939. *See also Clipper Pipe & Serv., Inc. v. Ohio Cas. Ins. Co., Contracting Sys.; Inc. II.,* —— Pa. ——, 115 A.3d 1278, 1284 (2015) (on certification from the United States Court of Appeals for the Third Circuit, concluding "CSPA does not apply to a construction project where the owner is a governmental entity."). However, at oral argument we confirmed the District does not challenge the award under the CSPA. Thus, we decline to disturb the trial court's award on this basis.